754 A.2d 615 (2000)
333 N.J. Super. 105
In re an Allegation of Physical Abuse Concerning R.P., a minor.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 2000.
Decided July 18, 2000.
*617 Louis P. Bucceri, Clifton, for appellant (Bucceri & Pincus, attorneys; Mr. Bucceri, of counsel and on the brief).
Andrea M. Silkowitz, Assistant Attorney General, for respondent (John J. Farmer, Jr., Attorney General, attorney; Ms. Silkowitz, of counsel and on the brief).
Before Judges SKILLMAN, NEWMAN and FALL.
*616 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The issue presented by this appeal is whether a teacher has a due process right to challenge the form of an investigatory finding by the Division of Youth and Family Services (DYFS) that the teacher has had improper physical contact with a student. We conclude that even though a teacher has no right to an adjudicatory hearing to challenge such a finding unless DYFS concludes that the teacher's conduct constitutes "substantiated" child abuse, the teacher may challenge the wording of the finding on the ground that it is misleading and unfairly damaging to his reputation. We also conclude that DYFS inaccurately and unfairly conveyed the impression that its finding was based on an adjudicatory hearing by stating in a letter to the teacher's employer that the finding was based on "the preponderance of the credible evidence." Accordingly, we require DYFS to send a corrected finding to the teacher's employer which clearly states that the finding was investigatory only.
On November 18, 1998, DYFS received a referral from the principal of an elementary school in Kearney who reported that the father of a first grader alleged that a teacher in the school, M.I.,[1] had grabbed his daughter, R.P., by the back of the neck. DYFS assigned an investigator to the matter, who interviewed R.P., her mother, father and sister, and various students, teachers and school administrators. R.P. stated that she had been engaged in "horseplay" with another student on the playground. M.I. started yelling at her, while holding onto her neck, which caused her to cry. R.P. said that M.I.'s "grasp *618 was hard and it hurt." R.P.'s allegations were corroborated by her older sister, who stated that she saw M.I. holding R.P.'s neck, and that she yelled at M.I. to get his hands off of her sister. In addition, R.P.'s father told the investigator that when R.P. came home from school, he noticed what appeared to be an adult handprint on the back of her neck. R.P.'s mother told the investigator that she did not see any redness on R.P.'s neck when she returned home from work, but that her daughter was upset.
M.I. told the investigator that one of his responsibilities was to be a "patrol adviser." A "patrol" student reported that he had seen R.P. run off the school property just before the beginning of school, and that he had also seen her kick another student. M.I. tried to question R.P. about her behavior, but she was crying so hard he could not question her. Consequently, he escorted R.P. back to her classroom and described what had happened to R.P.'s teacher. According to the DYFS investigator, M.I. "emphatically denied that he had any physical contact with the child."
R.P.'s teacher and a teacher's aide assigned to the classroom told the DYFS investigator that R.P. did not complain of any pain or discomfort after M.I. brought her back to the classroom, and that they did not notice any mark on her neck. Several of the students interviewed by the DYFS investigator stated that they had seen M.I. yelling at R.P., but none of them saw him grab her by the back of the neck.
Based solely on the information obtained in the investigator's interviews, DYFS sent a letter to the Kearney Superintendent of Schools, which stated:
On November 18, 1998, the Division's Northern Regional Investigation Unit received an allegation of physical abuse at the above named facility.
An investigation was conducted. Physical abuse was not substantiated, in accordance with the child abuse/neglect statutes of the State of New Jersey. However, there were concerns relative to the actions of School Teacher [M.I.]. The child sustained superficial injuries, red linear marks to her neck, as a result of this incident. Medical attention was not required. Physical intervention was determined to be unjustified and inappropriate, placing the child at some unnecessary and undue risk of harm. Specifically, the preponderance of the credible evidence indicated that [M.I.] grabbed [R.P.] by the back of her neck. [R.P.] was neither a danger to herself or others. Physical contact was not necessary as well as being contrary to district policy. Excessive force was not utilized.
Appropriate remedial/corrective action was taken at the onset of this investigation. [M.I.] was administratively counseled relative to the district's "hands off" policy. He was directed to have no contact with the child pending the outcome of this investigation. Finally, he was being closely supervised by the building principal.
Please confirm, in writing, within thirty days, action taken.
Similar letters were sent to M.I. and R.P.'s parents.
The Superintendent of Schools subsequently sent a letter to M.I., which stated:
As you are aware, the Division of Youth and Family Services conducted an investigation relative to the above matter. They concluded that the allegation of physical abuse was not substantiated. However, they expressed concerns regarding your actions.
The District has a responsibility to take the appropriate precautions to protect the student body when safety concerns arise.
This letter is to document that the appropriate precautionary actions have been taken. That is, you have been administratively counseled relative to the District's "hands off" policy and the building principal will continue to supervise you and all staff in an effort to avoid any future incidents.

*619 The District feels that based on the above, no further disciplinary or remedial action is required. This letter will become a part of your personnel file.... You should be aware that the District adheres to a progressive discipline system and that future incidents may result in more severe actions.

I
In In re Allegation of Physical Abuse Concerning L.R., 321 N.J.Super. 444, 449-50, 729 A.2d 463 (App.Div.1999), we held that DYFS has statutory authority to find that child abuse allegations against a teacher were "not substantiated," but that it has "concerns" the teacher's conduct may pose a risk of harm to his or her students.[2] We also concluded that although DYFS has the authority to report its concerns and recommendations to the school district that employs a teacher, it does not have the statutory authority to order a district to take corrective action or submit a remedial plan. Id. at 452-56, 729 A.2d 463. Finally, we concluded that DYFS may transmit an investigatory finding that child abuse allegations against a teacher were "not substantiated," but that "available information ... provides some indication that [a] child was harmed or placed at risk of harm," N.J.A.C. 10:129A-3.3(a)(2), to the school district that employs the teacher and to the child's parents, without affording the teacher an opportunity for an evidentiary hearing. Id. at 456-61, 729 A.2d 463. In reaching this conclusion, we noted that DYFS' findings were "purely investigatory." Id. at 458, 729 A.2d 463 (quoting Blackacre Academy, supra, 304 N.J.Super. at 182, 698 A.2d 1275).
M.I. does not challenge any of the holdings of our opinion in L.R. However, M.I. argues that DYFS' finding that "the preponderance of the credible evidence indicated that [M.I.] grabbed R.P. by the back of her neck" (emphasis added) constituted an "adjudication," and not simply an "investigatory finding." M.I. expresses concern that such an "adjudication" could be introduced into evidence at a "tenure charge" or other administrative proceeding brought against him. M.I. also alleges that this adjudication will be damaging to his professional reputation. Consequently, M.I. argues that he is entitled to judicial review of DYFS' findings or, in the alternative, that DYFS' findings should be modified to delete any reference to the "preponderance of the credible evidence" standard, thereby avoiding the implication that those findings are "adjudicatory" rather than "investigatory."
Under Article I, paragraph 1, of the New Jersey Constitution, a person has a constitutional interest in protecting his or her "good name or reputation ... because of what the government is doing to that person...." Doe v. Poritz, 142 N.J. 1, 105, 662 A.2d 367 (1995). A person's reputation may be entitled to constitutional protection even if he cannot show "any *620 other tangible loss." Id. at 104, 662 A.2d 367. Although a person's interest in protecting his reputation "trigger[s] the right to due process[,] [d]ue process is not a fixed concept, ... but a flexible one that depends on the particular circumstances." Id. at 106, 662 A.2d 367. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). Thus, even if a person has a constitutionally protected interest, it does not automatically follow that the person must be afforded an opportunity for an adjudicatory hearing. See High Horizons Dev. Co. v. State of New Jersey, Dept. of Transp., 120 N.J. 40, 48-54, 575 A.2d 1360 (1990); New Jersey State Parole Bd. v. Byrne, 93 N.J. 192, 211, 460 A.2d 103 (1983).
In In re Allegations of Sexual Abuse at East Park High Sch., 314 N.J.Super. 149, 714 A.2d 339 (App.Div. 1998), and New Jersey Div. of Youth & Family Servs. v. M.R., 314 N.J.Super. 390, 715 A.2d 308 (App.Div.1998), we held that if DYFS finds that a child abuse charge against a teacher has been "substantiated," which results in the inclusion of his name in DYFS' Central Registry of child abusers, the teacher is entitled to an administrative hearing to contest the finding.[3] We concluded in East Park that "[t]he loss of [a teacher's] good reputation, when the Central Registry information is shared with even a few private citizens, will irrevocably injure [the teacher's] previous good name[,]" and that "[a]ccording to Doe, this injury to good name and reputation, standing alone, is a protectible private interest under the New Jersey Constitution." 314 N.J.Super. at 162-63, 714 A.2d 339. We noted that a finding of substantiated child abuse would not only damage a teacher's reputation but also, by statute, bar his or her employment by a "child care employer[ ]." Id. at 163, 714A.2d 339.
In L.R., supra, we distinguished East Park and M.R., and held that a teacher is not entitled to a hearing to contest a finding that child abuse allegations have not been substantiated but that DYFS has expressed concerns about the teacher's conduct, because such a finding "is not included in the `Central Registry,'" and "is intrinsically less damaging to reputation than a finding that child abuse charges have been `substantiated'...." 321 N.J.Super. at 460, 729 A.2d 463. However, we did not say that such a finding has no adverse effect upon a teacher's professional or personal reputation, or that a teacher has no right to challenge the form of such a finding. We only concluded that "an investigative finding that child abuse allegations were `not substantiated' does not have a sufficiently direct and substantial impact upon employment or familial relationships to `entitle appellants to the due process protections required in adjudicatory proceedings.'" Id. at 461, 729 A.2d 463 (quoting Blackacre Academy, supra, 304 N.J.Super. at 183, 698 A.2d 1275). Therefore, this case provides the first occasion for us to consider whether the dissemination to a teacher's employer of DYFS' finding that child abuse allegations against the teacher were "not substantiated," but that there is "some indication that a child was harmed or placed at risk of harm," N.J.A.C. 10:129A-3.3(a)(2), poses a sufficient risk of damage to a teacher's reputation to entitle the teacher to assert a claim that the wording of the finding is unfair and misleading.
Although a finding that child abuse charges "have not been substantiated" is less damaging to a teacher's reputation *621 than a finding that such charges have been "substantiated," such a determination inevitably will have an adverse impact upon the teacher's reputation if it is accompanied by what appears to be an affirmative finding that the teacher has had improper physical contact with a student. For example, DYFS' finding in this case was placed in M.I.'s personnel file, and the Superintendent of Schools sent a letter to M.I. which indicates that the school district views that finding as a determination by DYFS that M.I. had improper physical contact with R.P. Thus, it appears likely that the presence of this finding in M.I.'s personnel file would be a substantial impediment to him being considered for any future promotion in the district. In addition, the letter indicates that M.I. would be subject to "more severe [disciplinary] action" if there were "future incidents." The finding against M.I. also was sent to R.P.'s parents, with no restriction upon further dissemination, and thus it is likely other persons in the school system and community learned of its contents as well. Consequently, the dissemination of DYFS' finding poses a genuine risk of significant damage to M.I.'s professional and personal reputation.
We have previously held in East Park and M.R. that the dissemination of DYFS' investigatory findings to a teacher's employer and others in the school and community poses a sufficient risk of damage to reputation to warrant due process protections. These decisions recognize that the damage to a teacher's reputation from a finding that a child abuse charge has been "substantiated" is so significant that a teacher is entitled to an adjudicatory hearing. Although a finding by DYFS that child abuse allegations have not been substantiated, but that DYFS has expressed concerns about a teacher's conduct, does not entitle the teacher to an evidentiary hearing, L.R., supra, 321 N.J.Super. at 456-61, 729 A.2d 463, we believe that the risk of damage to a teacher's reputation from such a finding is sufficient to warrant some due process protection. See East Park, supra, 314 N.J.Super. at 162-63, 714 A.2d 339.
What due process requires depends in part on "the private interest at stake" and on "the fiscal and administrative burdens... additional procedural safeguards would entail." J.E. on Behalf of G.E. v. Deptartment of Human Services, 131 N.J. 552, 566-67, 622 A.2d 227 (1993). The impact upon a teacher's reputation of a finding by DYFS expressing concern about the teacher's conduct may be significant, especially if it is accompanied by what appears to be an affirmative finding by DYFS that a teacher has had improper physical contact with a student. Moreover, the "fiscal and administrative burden" involved in reviewing the form of such a finding to assure that it is not misleading and unfairly damaging to a teacher's reputation is minimal. Therefore, we conclude that a teacher against whom such a finding is made has a due process right to challenge the wording of such a finding on the ground that it is misleading and unfairly damaging to his reputation. Cf. Pelullo v. State Comm'n of Investigation, 294 N.J.Super. 336, 349-50, 683 A.2d 558 (App.Div.1996) (indicating that even though the subject of a derogatory report by the State Commission of Investigation has no right to an adjudicatory hearing to challenge the report, he is entitled to "reasonable protection against false and reckless information by means of procedural safeguards ...."), certif. denied, 149 N.J. 35, 692 A.2d 48 (1997).
DYFS' finding against M.I. is also subject to challenge on another basis. In addition to enforcement of procedural due process requirements, this State's courts have broad authority and responsibility under our prerogative writ jurisdiction, N.J. Const., art. VI, § 5, ¶4, "to insure procedural fairness in the administrative process and to curb administrative abuses." Monks v. New Jersey State Parole Bd., 58 N.J. 238, 249, 277 A.2d 193 (1971). In Donaldson v. Board of Educ. of *622 N. Wildwood, 65 N.J. 236, 320 A.2d 857 (1974), the Court relied upon this authority to require a local board of education to provide a statement of reasons for not renewing the contract of an untenured teacher as a safeguard against the arbitrary or abusive exercise of administrative power. Similarly, we conclude that the wording of DYFS' disseminated investigatory findings is subject to judicial review and correction "to curb administrative abuses." Monks, supra, 58 N.J. at 249, 277 A.2d 193.
DYFS' letters to the Superintendent of Schools and to R.P.'s parents inaccurately implied that DYFS had conducted an adjudicatory proceeding, resulting in a finding which credited R.P.'s version of the incident and discredited M.I.'s version. There is a fundamental distinction between investigatory and adjudicatory findings. An investigator simply interviews witnesses and examines other available evidence, reviews and analyzes this information and makes a recommendation as to whether any action should be taken against the subject of the investigation. Although an investigator should strive to be objective in gathering and evaluating evidence, the target of an investigation has no means of assuring its impartiality and has no effective recourse if an investigator is biased. In contrast, in an adjudicatory proceeding, the party against whom the action has been brought is afforded an opportunity to cross-examine the investigator and other witnesses and to present evidence to rebut the charge. In addition, the trier of fact who makes adjudicatory findings is not an individual who has been personally involved in the investigation and decision to bring the charges, but rather an ALJ or other person whose sole responsibility is to fairly and impartially judge the evidence.
A finding by DYFS that child abuse charges have not been substantiated, but that there is some indication a child was harmed or placed at risk of harm, is purely investigatory in nature, see L.R., supra, 321 N.J.Super. at 452, 729 A.2d 463, with none of the procedural protections of an adjudicatory proceeding. However, by stating that "the preponderance of the credible evidence" supported its finding that M.I. had improper physical contact with R.P., DYFS inaccurately and unfairly conveyed the impression that its finding was based on an adjudicatory hearing. Therefore, M.I. is entitled to have this language corrected so that it simply states, in accordance with DYFS' own regulation, that DYFS' investigation revealed some evidence of harm or risk of harm to R.P., but that there has been no determination of the accuracy of R.P.'s allegations. Although this correction will not totally eliminate the potential harm to M.I.'s reputation from DYFS' investigatory finding, it will reduce the harm by clearly informing the school district, and other parties to whom the finding is disseminated, that there has not been any adjudication of those allegations.

II
DYFS' communications of its findings and recommendations to the Kearney School District must be corrected in another respect as well. DYFS' letter to the Kearney Superintendent of Schools concerning the investigation of M.I. concluded by stating:
Please confirm, in writing, within thirty days, action taken.
When the Superintendent did not respond, DYFS sent him another letter, dated February 25, 1999, which stated in pertinent part:
Our records indicate that the corrective action response requested in our 01/21/99 report sent to you concerning the above investigation has not been received.
Recommendations are made in our investigation reports to remedy concerns that have been identified and to prevent future incidents from occurring.

*623 Please send me documentation of your corrective action so we can close this file.
Shortly thereafter, the Superintendent sent M.I. the previously quoted reprimand letter dated March 5, 1999.
In L.R. we held that DYFS does not have statutory authority to order a school district to take remedial action in response to DYFS' investigatory findings. 321 N.J.Super. at 452-56, 729 A.2d 463. Instead, once DYFS completes an investigation of a child abuse complaint against a teacher and makes whatever recommendation it may have to the school district, DYFS has fully discharged its responsibilities and may close its file. Id. at 453, 729 A.2d 463. We also indicated that "DYFS' directive to [a] School District to `confirm' its corrective action `in writing' at least implied that the district was required to act in accordance with DYFS' recommendations, rather than to exercise its own independent judgment in deciding what action, if any, to take." Id. at 454, 729 A.2d 463. Accordingly, we directed DYFS "to notify the ... school district that DYFS' reports concerning the child abuse allegations against appellants did not require the district to take any disciplinary or other personnel actions but were investigatory findings and recommendations only, and that the district has the responsibility to make an independent judgment as to whether to accept DYFS' findings and recommendations." Id. at 456, 729 A.2d 463. Similarly, DYFS' demand for a "corrective action response" from the Kearney School District incorrectly indicated that DYFS had the authority to direct the school district to take remedial action, rather than to exercise its own independent judgment in deciding what action, if any, to take.
For these reasons, DYFS must send a corrected letter to the Kearney Superintendent of Schools and any other person to whom its final decision in this matter was disseminated, which clearly states that its finding was purely investigatory and that it made no adjudication of R.P.'s allegations against M.I. The corrected letter to the Superintendent must also clearly indicate that the school district is not required to take any remedial action. DYFS should confer with M.I.'s counsel regarding the corrected form of the disseminated reports of its investigatory findings. If the parties are unable to reach agreement, an appropriate application may be made to this court.
The case is remanded to DYFS for the correction of its disseminated investigatory findings in conformity with this opinion. Jurisdiction is not retained.
NOTES
[1] As in our prior opinions involving DYFS child abuse investigations, we have used initials and/or fictitious names to refer to the appellant and the alleged victim. See e.g., In re Allegations of Physical Abuse at Blackacre Academy, 304 N.J.Super. 168, 168 n. 1, 698 A.2d 1275 (App.Div.1997).
[2] DYFS' regulations establish three categories of findings that may be made as a result of a child abuse investigation:

1. "Substantiated" when the available information, as evaluated by the Division representative, indicates that a child is an abused or neglected child as defined in N.J.A.C. 10:133-1.3 because the child has been harmed or placed at risk of harm by a parent, caretaker, temporary caretaker or institutional caretaker.
2. "Not substantiated" when the available information, as evaluated by the Division representative, provides some indication that a child was harmed or placed at risk of harm, but does not indicate that the child is an abused or neglected child as defined in N.J.A.C. 10:133-1.3; or
3. "Unfounded" when:
i. There is no evidence of conduct that would pose risk to the child;
ii. There is no evidence that a parent, caretaker, temporary caretaker, institutional caretaker or child was involved; or
iii. The available information indicates that the actions of the parent, caretaker, temporary caretaker, or institutional caretaker were necessary and reasonable and the incident was an accident.
[N.J.A.C. 10:129A-3.3(a).]
[3] Three members of the court rested this conclusion on the procedural due process guarantees of the United States and New Jersey Constitutions. East Park, supra, 314 N.J.Super. at 159-66, 714 A.2d 339 (Long, J.); M.R., supra, 314 N.J.Super. at 420-25, 715 A.2d 308 (Skillman, J., concurring); id. at 425-26, 715 A.2d 308 (Eichen, J., concurring). Judge Petrella relied upon the "fundamental fairness" doctrine to reach the same conclusion. Id. at 411-13, 715 A.2d 308.