# RECORD IMPOUNDED

---

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

---

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3016-15T1

DEPARTMENT OF CHILDREN AND
FAMILIES, DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Petitioner-Respondent,

v.

S.M.,

    Respondent-Appellant.

_____

Submitted June 1, 2017 — Decided July 24, 2017

Before Judges Gooden Brown and Farrington.

On appeal from the Department of Children and
Families, Division of Child Protection and
Permanency, DCF Case No. 16250240.

Christian A. Pemberton, attorney for
appellant.

Christopher S. Porrino, Attorney General,
attorney for respondent (Andrea M. Silkowitz,
Assistant Attorney General, of counsel; Lori
J. DeCarlo, Deputy Attorney General, on the
brief).

PER CURIAM

Appellant S.M.[1] appeals from the February 1, 2016 final agency decision of the Public Defender's Conflict Investigation Unit (PDCIU), acting as an agent for the Department of Children and Families (Department), finding that an allegation of abuse and neglect against S.M. was "not established" pursuant to N.J.A.C. 10:129-7.3(c)[2] and N.J.S.A. 9:6-8.21. S.M. argues that the evidence adduced through the investigation fails to meet the standard for "not established" but rather shows that the allegation was "unfounded." We disagree and affirm.

                                    I.

S.M., a caseworker with the Division of Child Protection and Permanency (Division), a Division of the Department, has been employed by the Division for ten years. From September 26 to November 23, 2015, she was assigned to supervise the visitation of H.B. with her five-year-old adopted son, M.B., who was removed from H.B.'s care along with other foster and adoptive children and placed in the Division's custody in the wake of threats of gun violence by H.B. and pending child endangerment criminal charges against H.B.

---

[1] We use initials to protect the privacy of those involved and to preserve the confidentiality of this matter.

[2] N.J.A.C. 10:129-7.3 was recodified as N.J.A.C. 3A:10-7.3 effective January 3, 2017. See 49 N.J.R. 98(a) (Jan. 3, 2017). Where applicable, we cite the recodified regulations.

H.B. was entitled to supervised visits for two hours, twice a week, at the Division office. Because the visits were classified as "high alert visits," S.M. was required to see and hear the parties at all times and follow other safety precautions, which included random "walk-throughs" of the visitation area by the security guard on duty, security screening upon entry by the guard of all family members, and staff carrying a buzzer to alert the guard if necessary. S.M. described the visitation protocol as follows:

> [H.B.] and her family sat in the first visiting room, Room #1, and [S.M.] sat outside the visiting room on a chair outside the door, with the door open. The security guard on duty made rounds, but his desk is outside a closed door at the end of that hallway, closest to room #1. . . . [W]hen [M.B.] need[ed] to use the rest room, [S.M.] escorted [him] and his mother out into the lobby area where the guard was seated and waited inside the bathroom for them to finish. . . . [I]f [S.M.] needed to use the bathroom, and she [had] no relief, she would walk [M.B.] out into the lobby area where the security guard was seated, and had him sit in the lobby while being monitored by the guard until she [was] finished.

On November 25, 2015, the Division received an e-mail referral from a self-proclaimed "former journalist" and "government activist" alleging "child endangerment" at a Division office based on S.M. leaving the parties unsupervised during their November 16 and 23, 2015 visits. To support the allegations, the referent

attached two photos with captions purportedly posted on Facebook by H.B. Both photos depicted an image of an empty chair. One caption read "Last night we had our visit at the dyfs office. [S.M.] left her chair empty many times and [at] one point fell asleep! I was about to take a picture and she woke up." The other caption read "We are a super huge threat so we must see [M.B.] at the dyfs office. All workers must wear emergency buzzer. Check this out, guard no longer takes apart my bags to search and oh do you see the worker?????"

As a result of the referral, pursuant to N.J.S.A. 9:6-8.11, an investigation by the PDCIU was conducted.[3] In the course of the investigation, interviews with H.B., her paramour and her adult daughter were conducted during which they confirmed observing S.M. sleeping, talking on the phone and walking away from her post during visits. Regarding the November 16 visit, although H.B. could not recall exactly how long S.M. was gone, H.B. provided a photo from her phone of S.M.'s empty chair to document her absence at 6:20 p.m. Regarding the November 23 visit, H.B. provided photos taken at 5:18 p.m., 5:43 p.m., and 6:50 p.m.,

---

[3] The PDCIU acts as an agent of the Division to investigate allegations of abuse or neglect "in situations involving [Division] employees and those persons with whom they have a personal or professional relationship, or with whom their objectivity may be compromised." N.J.A.C. 3A:10-1.3.

each of which depicted S.M.'s empty chair. In two of the photos, a blue bag identified by H.B. as S.M.'s bag was depicted on a chair next to S.M.'s purported empty chair. According to H.B., at one point that evening, she observed S.M. sleeping in her chair but S.M. woke up when she tried to take her picture. H.B. also confirmed posting the photos with the captions on Facebook and being contacted via Facebook by an individual who identified himself as a journalist.

S.M. was also interviewed during the investigation and disputed the allegations. Although she specifically denied ever sleeping during a visit, she admitted taking calls and receiving messages while supervising visits but asserted that she remained in her chair outside of the visitation room. When confronted with the photos of her empty chair containing only a blue bag, S.M. confirmed that the bag belonged to her but explained that any absences from her post were for bathroom breaks. According to S.M., during bathroom breaks for M.B., she accompanied H.B. and M.B. to the bathroom and during bathroom breaks for herself, she obtained coverage in accordance with office protocol.

S.M. explained that at some point during the November 16 visit, a co-worker sent her a text asking to use her employee access card. The co-worker confirmed that S.M. was positioned outside the visitation room when she came to retrieve the card.

S.M. also stated that during the November 23 visit, she sent a text at 6:49 p.m. to another co-worker, asking to be relieved to use the bathroom, and she was immediately relieved. The co-worker confirmed S.M.'s account and provided a screenshot of the text message documenting the exchange.

The investigation concluded that "the allegation of neglect for inadequate supervision" by S.M. was "not established." The report noted that while "[t]he information gathered in this investigation did not constitute child abuse or neglect as defined by . . . [N.J.S.A. 9:6-8.21], . . . the child was harmed or placed at risk of harm." S.M. was notified of the investigative finding through correspondence dated February 1, 2016, and this appeal followed.

## II.

On appeal, S.M. argues, "there is no indicia that the standard of preponderance of the evidence was applied" in the PDCIU's conclusion. Rather, S.M. asserts that "[t]he investigator's 'evaluation' is simply a recitation of evidence[,] not an analysis[.]" As such, according to S.M., "the findings of the [PDCIU] fail both factually and as a matter of law" and are therefore "arbitrary and capricious." S.M. urges that the findings of the PDCIU be set aside and the accusations against her be deemed "'unfounded' within the meaning of N.J.A.C. 10:129-7.3(c)"

instead. S.M. argues further that due process and our prior decisions demand that the notification include language clearly explaining "that the investigation is inconclusive, and is not adjudicatory." We reject both arguments.

We are guided by well-established principles in our review of the Department's decision. A finding of "not established" does not entitle a party to a hearing, see N.J.A.C. 3A:5-4.3(a)(2), but is deemed a final agency decision appealable as of right to the Appellate Division. R. 2:2-3(a)(2). The scope of appellate review of an administrative agency's final determination is limited. In re Stallworth, 208 N.J. 182, 194 (2011).

In determining whether an agency action is arbitrary, capricious, or unreasonable, we must make three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Herrmann, 192 N.J. 19, 28 (2007) (quoting Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)).]

Where an agency satisfies this standard of review, we must give "substantial deference to the agency's expertise and superior

knowledge of a particular field." Id. at 28. We must defer even if we would have reached a different result. In re Carter, 191 N.J. 474, 483 (2007).

In short, we are not permitted to substitute our judgment "for that of [the] administrative agency." Barrick v. State, 218 N.J. 247, 260 (2014) (alteration in original) (citation omitted). Finally, there is a "strong presumption of reasonableness [that] attaches to the actions of the administrative agencies." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)).

With these principles in mind, we discern no factual or legal basis to overturn the Department's final decision that the allegation of abuse was "not established." If the Department evaluates an allegation of abuse, it must determine if the allegation is "substantiated," "established," "not established," or "unfounded." See N.J.A.C. 3A:10-7.3(c). After completing its investigation, the Department must "notify the alleged perpetrator and others of the outcome of its investigation." Matter of E. Park High Sch., 314 N.J. Super. 149, 155 (App. Div. 1998).

N.J.A.C. 3A:10-7.3(c)(3) defines "not established" as follows:

An allegation shall be "not established" if there is not a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm.

An allegation is deemed "unfounded" if

there is not a preponderance of the evidence indicating that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, and the evidence indicates that a child was not harmed or placed at risk of harm.

[N.J.A.C. 3A:10-7.3(c)(4).]

An "abused or neglected child" is defined in N.J.S.A. 9:6-8.21(c) in pertinent part as

[A] child less than 18 years of age whose . . . physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court[.]

[N.J.S.A. 9:6-8.21(c)(4).]

"Parent or guardian" as defined by N.J.S.A. 9:6-8.21(a) includes "a teacher, employee, or volunteer . . . of an institution who is responsible for the child's welfare and any other staff person of

an institution regardless of whether or not the person is responsible for the care or supervision of the child."

Only conduct that is "grossly or wantonly negligent" constitutes failure to "exercise a minimum degree of care" under N.J.S.A. 9:6-8.21(c)(4). G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999); L.A. v. N.J. Div. of Youth & Family Servs., 217 N.J. 311, 332 (2014). Not every harm or risk of harm is of such a serious nature to cause a child to become an abused or neglected child. Thus, it is not inconsistent to find that a child was placed at risk of harm and yet was not abused or neglected.

Applying the appropriate standard of review, we conclude that the Department's determination that the allegation was "not established" pursuant to N.J.A.C. 3A:10-7.3(c)(3) is supported by substantial evidence in the record and is neither arbitrary, capricious, nor unreasonable. We therefore find no reason to disturb the Department's determination. While the record clearly demonstrates that M.B. was not abused or neglected pursuant to N.J.S.A. 9:6-8.21(c), the finding of "not established" was appropriate because the evidence indicated that M.B. was placed at risk of harm by S.M.'s failure to maintain constant audio and visual contact during "high alert" supervised visits. The witness statements, photos and S.M.'s own admissions that she took calls and received messages during visits support the conclusion.

10

We also reject S.M.'s contention that the notification should include language clearly explaining "that the investigation is inconclusive, and is not adjudicatory." In In re R.P., 333 N.J. Super. 105, 113 (App. Div. 2000), we stated that "[a] finding by [the Department] that child abuse charges have not been substantiated, but that there is some indication a child was harmed or placed at risk of harm, is purely investigatory in nature, with none of the procedural protections of an adjudicatory proceeding." (citation omitted). See also Dep't of Children & Families v. D.B., 443 N.J. Super. 431, 443-44 (App. Div. 2015); N.J. Dep't of Children & Families' Institutional Abuse Investigation Unit v. S.P., 402 N.J. Super. 255, 270-71 (App. Div. 2008); In re A.I., 393 N.J. Super. 114, 131 (App. Div. 2007).

"We did, however, find that teachers do have the right to challenge the wording of the findings of the Department" communicated to their employer. D.B., supra, 443 N.J. Super. at 444 (citing S.P., supra, 402 N.J. Super. at 270-71). However, "'[d]ue process is flexible and calls for such procedural protections as the particular situation demands.'" R.P., supra, 333 N.J. Super. at 113 (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484, 494 (1972)). Here, given the fact that the investigating agency and the employer are essentially the same entity, we find no procedural defect or

11

violation of due process in the Department's failure to include S.M.'s requested language in the notification. Moreover, neither D.B., S.P., nor In re A.I. dictates a contrary conclusion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION