# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0885-20

DEPARTMENT OF CHILDREN
AND FAMILIES,

     Petitioner-Respondent,

v.

T.M.,

     Respondent-Appellant.

_____

Submitted November 8, 2021 – Decided December 6, 2021

Before Judges Sabatino and Mayer.

On appeal from the New Jersey Department of Children and Families, Division of Child Protection and Permanency, Case Id. No. 17310841.

Joseph E. Krakora, Public Defender, attorney for appellant (Phuong V. Dao, Designated Counsel, on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

PER CURIAM

T.M. appeals the Division of Child Protection and Permanency's final agency determination under N.J.A.C. 3A:10-7.3(c) that his commission of child abuse or neglect was "not established." The determination followed the Division's investigation of an incident in which Th.M., appellant's four-year-old biological daughter, allegedly witnessed appellant threaten and behave violently toward her mother, M.A.

Applying the deferential scope of review pertinent to such agency determinations, we affirm.

## I.

This case arises from an allegation of child abuse and neglect reported to the Jersey City Police Department on May 20, 2019. The report to the police resulted in appellant's arrest[1] on charges of domestic violence and an investigation by the Division's Bergen Hudson area office. The mother obtained a temporary civil restraining order against appellant, although she voluntarily dismissed it several days later.

On the basis of its investigation of appellant's behavior, the Division issued a written finding of "not established" on July 18, 2019. The Division

---

[1] The criminal charges were eventually dismissed.

readopted that finding on November 23, 2020 after it had reconsidered the matter on remand in light of the Supreme Court's recent decision in S.C. v. Department of Children and Families, 242 N.J. 201 (2020).

On appeal, appellant argues that he was entitled to a finding of "unfounded" rather than "not established." He contends the Division overlooked relevant evidence and its investigation was incomplete and incompetent. More specifically, appellant argues there is insufficient evidence that his daughter was at risk because, according to both the mother and the Division's account of his interactions with his daughter, he is a good father, and any indirect harm stemming from his interactions with M.A. is insufficient to meet the level of harm or risk of harm as defined in the statute. Appellant cites in this regard N.J. Department of Children & Families v. R.R., 454 N.J. Super. 37 (App. Div. 2018), where this court remanded a Division determination of "not established" due to the Division's failure to consider key documents and inaccuracies in their reporting, to argue that the Division's determination here was similarly deficient.

Further, appellant contends the Division was obligated to conduct a trial-type proceeding because of the reputational and other harm flowing from the "not established" ruling. Additionally, he argues the Division's reconsideration of the case on remand after the Supreme Court's opinion in S.C. was inadequate.

 A-0885-20

## II.

The governing legal principles are clear. Child abuse or neglect, as statutorily defined in Title Nine by N.J.S.A. 9:6-8.21(c), occurs when:

> a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

The statute does not require that the child experience actual harm. N.J.S.A. 9:6-8.21(c)(4)(b); see also N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 449 (2012) (explaining that the Division need not wait until a child experiences an actual injury); see also In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999) (stating that the court does not need to "wait to act until a child is actually irreparably impaired by parental inattention or neglect"). Instead, a child can be abused and neglected if that child's physical, mental, or emotional condition has been "impaired or is in imminent danger of becoming impaired . . ." N.J.S.A. 9:6-8.21(c)(4).

4

The "abuse or neglect" of a child can be substantiated by a pattern of abuse or a sufficiently grievous instance of physical assault between the child's parents in the child's presence that in turn causes the child distress. See, e.g., New Jersey Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551 (App. Div. 2010) (finding "abuse or neglect" of a child as defined by N.J.S.A. 9:6-8.21(c)(4) where experts concluded that the parents' abusive relationship and their untreated psychological conditions "created a high degree of risk that the children would be harmed"); but see New Jersey Div. of Youth & Family Servs. v. N.M., 438 N.J. Super. 419 (App. Div. 2014) (finding insufficient evidence to establish that mother abused or neglected children who witnessed their mother be sexually assaulted by a former boyfriend with whom she had no history of violence, and where there was no evidence that the children suffered any emotional harm as a result of the single incident).

The Title Nine analysis of abuse or neglect is fact-sensitive, and the court must consider the totality of the circumstances. See N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 33 (2011); see also N.J. Div. Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 329-30 (App. Div. 2011) (noting the trial court's findings must be based "on the totality of the circumstances, since '[i]n child abuse and neglect cases the elements of proof are synergistically related.

Each proven act of neglect has some effect on the [child]. One act may be 'substantial' or the sum of many acts may be 'substantial.'") (citations omitted). The primary focus of the statute is to preserve the safety of the child. N.J.S.A. 9:6-8.8(a).

Under regulations adopted pursuant to Title Nine, allegations that a child has been abused or neglected can either be administratively "substantiated," "established," "not established," or "unfounded" after an investigation by the Division. N.J.A.C. 3A:10-7.3(c). Different consequences flow from these four designations.

In order for an allegation to be either "substantiated" or "established" (the most serious two categories) the Division must show, by a preponderance of the evidence, that the child or children at issue meet the definition of "abused or neglected." Ibid.

By comparison, the Division is to make a finding of "not established" (the third category) when "there is not a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(3) (emphasis added).

A "not established" finding is distinguishable from a determination of the fourth category, "unfounded," which is appropriate where "evidence indicates that a child was <u>not</u> harmed or placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(4) (emphasis added); <u>see</u> <u>S.C.</u>, 242 at 227 ("[t]he critical distinction between findings of not established and unfounded is that not established findings are based on <u>some evidence</u>, though not necessarily a preponderance of the evidence, that a child was harmed or placed at risk of harm.") (emphasis added).

Under this four-tiered regulatory scheme, a finding of "not established" therefore differs from a finding that child abuse or neglect was "established" or "substantiated" in two ways: first, relating to the quantum of evidence, and second, the nature of the finding. <u>R.R.</u>, 454 N.J. Super. at 41. First, only "some" evidence, rather than a preponderance of the evidence, need be found. <u>Ibid.</u> Second, the lesser quantum of evidence for a "not established" finding need only "indicate" that a "child was harmed or was placed at risk of harm," rather than establishing the child was abused or neglected as defined in N.J.S.A. 9:6-8.21(c). <u>Id.</u> at 42 (quoting N.J.A.C. 3A:10-7.3(c)(3)). This court has previously noted that:

> [P]lacing a child 'at risk of harm' may involve a lesser risk than the 'substantial risk of harm' or 'imminent danger' required to establish abuse or neglect under the statute. As the Department explained, 'Where utilized,

7

'evidence indicates' refers to a child having been harmed or placed at risk of harm. This is a lesser standard than satisfaction of the statutory requirement in N.J.S.A. 9:6-8.21.

[Ibid. (citing 45 N.J.R. 738(a) (response to Comment 45)).]

The consequences flowing from a determination of "not established" and "unfounded" have significant differences. Although the Legislature requires expunction for child abuse or neglect allegations determined to be "unfounded" under N.J.S.A. 9:6-8.10(a), no such statutory or regulatory provision authorizes that relief for the three other possible determinations, including findings of "not established." See S.C., 242 at 211-12. Indeed, under N.J.A.C. 3A:10-8.1(b), a "not established" determination, similarly to findings of "substantiated" and "established" abuse or neglect, must be retained on file by the Division. Id. at 226.

Although the Division's records and reports associated with a "not established" determination remain statutorily confidential, the information can be made available under twenty-three circumstances identified in N.J.S.A. 9:6-8.10(a), and by the Department of Children and Families in other contexts relating to its child protection and welfare work. See id. at 212, 229-30.

In S.C., our Supreme Court thoroughly charted the development of the four designations under N.J.A.C. 3A:10-7.3(c) and the Division's evidentiary burden with respect to each category. In its discussion, the Court particularly focused on the advent of the "not established" designation by regulation in 2013. See 242 N.J. at 224-30.[2]

The Court noted in S.C. that, while the "not established" designation connotes that the "evidence" of child abuse or neglect falls below the level of a "preponderance of the evidence," as necessitated for findings of "substantiated" or "established," the regulation itself expresses no further guidance as to the applicable evidentiary standard. Id. at 225 (citing N.J.A.C. 3A:10-7.4(c)(3), which states only that "not established" requires a finding that "evidence indicates that the child was harmed or was placed at risk of harm.") (Emphasis added). The Court elaborated that such a finding requires "less than a preponderance of the evidence and involves 'some' evidence … [which] must be understood to be 'credible evidence.'" Id. at 239.

---

[2] While it is not necessary to retrace here the Court's in-depth analysis of the history regarding the four categories adopted under N.J.A.C. 3A:10-7.3(c) for present purposes, it is worth noting that that the Title Nine—the enabling statute—confers on the agency the authority to determine only whether allegations of abuse or neglect are "substantiated" or "unfounded." See S.C., 242 N.J. at 245-46 (J. Albin, concurring) (citing N.J.S.A. 9:6-8.10a; N.J.S.A. 9:6-8.40a).

Also, the Court in S.C. addressed the constitutional due process concerns implicated under the Division's procedural regime as it then existed. See S.C., 242 at 230-35. The Court referenced the well-recognized distinction, as established in Hannah v. Larche, 363 U.S. 420, 440-41 (1960), between investigations and adjudications in the context of child welfare determinations to guide its analysis. Ibid.

The Court noted in S.C. that our State's case law has repeatedly characterized determinations of "not established" as being investigatory rather than adjudicatory in nature. S.C., 242 N.J. at 232. Such findings involve "no determination of [] accuracy," but only "interviews and other 'available evidence' followed by a review and analysis of the information." Id. at 233 (quoting In re R.P., 333 N.J. Super. 105, 117 (App. Div. 2000)). In line with that finding, the Court explained the agency "has not adjudicated facts or reached any sort of conclusion about what actually occurred when it applies a 'not established' finding; rather it merely ascribes what functions as a working label to the evidence collected through investigation." Ibid.

To determine what level of procedural process is due in the context of "not established" findings, the Court balanced the parent's assertion of a liberty interest in reputation with the private interest in intra-agency retention and use

of its investigatory work product. Id. at 235. Given the diminished due process standard applicable to investigatory actions, the Court ruled that "[d]ue process does not require an adjudicatory proceeding under such circumstances." Ibid. (emphasis added). Instead, the Court held in S.C. that, rather than necessitating a "full-fledged adjudicatory hearing[,]" a party's due process rights can be met through:

> (1) meaningful notice of the Department's planned investigatory conclusion of a 'not established' finding and (2) affording the investigated subject an informal opportunity to be heard by the agency before the investigatory finding is finalized.
>
> [Id. at 238.]

Relating this newly formulated standard to S.C.'s case, the Court found that a "conclusory letter" that failed to inform S.C. "of the basis for the [agency's] 'not established' finding[,]" and provided no "adequate means of formally making known … the opportunity to be heard informally and rebut or supplement the record" was constitutionally insufficient. Id. at 239.

III.

Applying these principles announced in S.C. to the case before us, we are satisfied that there is at least "some" credible evidence in the record that appellant committed the abuse or neglect of his child, and that the allegations against him were not completely "unfounded."

The Division conducted and reported in detail three interviews with the family, two of which involved appellant, before reaching its determination. The interviews and other sources revealed to the Division evinced the following: (i) appellant had made verbal threats to the mother following a dispute over their co-ownership of a home, including that if the mother were awarded the home "she would have signed her own death warrant[,]" and he would "burn the house down"; (ii) appellant had "bumped [the mother] with his chest" while making these threats; (iii) appellant had threatened to remove the daughter from the mother; (iv) the mother was sufficiently scared that appellant could carry out these threats to call the police; and (v) this was not the first incident of physical and/or verbal abuse on appellant's part, indicating in particular a 2016 dispute that Jersey City police records corroborated. The Division further noted that police officers had "reported that [the mother] was crying and holding [the daughter] in fear" upon their arrival at the residence on May 20, 2019.

A-0885-20

Furthermore, the Division obtained relevant statements from the daughter concerning the May 20 incident. Specifically, the child told the Division interviewer she had heard appellant yelling, throwing the mother's clothes on the floor, and heard appellant provoking the mother to hit him. The child also said she was "scared" of appellant. According to the mother, the child asked after the May 20 confrontation to "go to grandma's," where the mother reports having previously taken her after arguments with appellant.

In sum, contrary to appellant's argument that the Division's investigation was deficient or that it swept aside material evidence sufficient to remand the matter as in R.R., the Division's investigatory reports and records reveal it followed on objective, thorough process before reaching a determination.

Appellant disagrees with the credibility determinations made by the Division. In particular, he criticizes the Division placing any weight on the police report and the mother's initial account of what happened during the May 20 incident. He argues the Division should have discounted the mother's initial version entirely, because of her later statement, made on July 12, 2019, that she "may not have heard what she thinks she heard."

Similarly, appellant downplays the daughter's earlier statements about being afraid and interactions she heard and saw during the May 20 incident by

13

emphasizing that, as reported in the third report prepared by the Division, "[the daughter] greet[ed] her father with a big hug[]" when he walked through the door, and "did not show any fear or hesitation towards her father." Appellant further points to the mother's concession that appellant is a "great father," as she noted during one of her interviews with the Division.

Even so, the comparative weighing of initial and follow-up witness statements is the very sort of investigatory assessment that the Division is tasked with making. The fact that the daughter later showed affection to appellant after this traumatic experience does not wipe away the evidence of that violent encounter.

There are notable similarities between the facts set forth in the police report prepared the evening of May 20 and the mother's first interview with a Division agent that occurred the following day, May 21. For instance, the mother advised the police on May 20 that appellant told her "if you get the house, it will be your death sentence and I will burn the house down." Similarly, the mother told the Division agent at her May 21 interview that appellant threatened that "if she called the police and he was arrested, he would burn the house to the ground when he got out," and "if she refuses to leave the house, that will be her death sentence."

A-0885-20

Appellant incorrectly asserts that the Division ignored information that could suggest the mother was biased. To the contrary, the Division's report did include a reference to the mother's statement that she would rather co-parent with appellant while living in different houses, a statement that arguably suggests a possible motivation for her to accuse him falsely of engaging in violence or making threats at the residence.

Also, the Division's last interview report mentioned an agent "explored [the mother's] mental health and whether she is prone to panic attacks," which the mother addressed, mentioning such problems had only arisen due to her "bully for a boss." This entry contradicts appellant's contention that the Division paid no attention to the mother's mental health issues.

We reject appellant's legal argument that "substantial evidence"—not "some credible evidence"—is required to support the findings on which the agency based its action to survive appellate review. As the Supreme Court clarified in S.C., the evidentiary standard the Division needs satisfy to issue a "not established" finding is only "some credible evidence." Appellate review of such a determination does not require this court to reconsider facts uncovered in the Division's investigation under a more stringent evidentiary standard. Instead, we owe a high degree of deference to such agency determinations,

A-0885-20

where they are not shown to be either arbitrary, capricious, or unreasonable. See Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 301 (2011) (reiterating that this court is "bound to uphold an agency's decision unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."). That showing has not been made on this appeal.

Lastly, we reject appellant's contention that he was entitled to an evidentiary hearing. The Court's opinion in S.C. does not require such a formal hearing. Instead, as we noted above, the Court only required the Division to (1) provide a parent or guardian with "meaningful notice" of a planned investigatory conclusion of a "not established" finding, and (2) an "informal opportunity to be heard" before the finding is finalized. S.C., 242 N.J. at 238. Here, the Division provided appellant with such notice and an opportunity to be heard, after the case was remanded upon the Division's own request following the Court's opinion in S.C. Appellant did not provide the Division on remand with further testimony or evidence that disproves its readopted finding of "not established."

In sum, we discern no basis to set aside the Division's "not established" finding in this case. Any arguments we have not expressly mentioned lack

sufficient merit to warrant discussion in this opinion.  R. 2:11-3(e)(1)(D) and

(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0885-20