# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4073-23

B.T.,

     Petitioner-Appellant,

v.

DEPARTMENT OF CHILDREN
AND FAMILIES,

     Respondent-Respondent.

_____

Submitted September 15, 2025 – Decided September 26, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the New Jersey Department of Children and Families, Division of Child Protection and Permanency, Case ID No. 10113310.

Williams Law Group, LLC, attorneys for appellant (Alvin Eugene Richards, III, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Meaghan Goulding, Deputy Attorney General, on the brief).

PER CURIAM

B.T. (Bill) appeals from a final agency decision of the Department of Children and Families, Division of Child Protection and Permanency (Division), which determined that allegations of abuse and neglect against N.R.-A. (Nora) were "not established" under N.J.A.C. 3A:10-7.3(c)(3).[1] Bill argues that the Division did not identify any credible evidence supporting its determination. Because we are satisfied the "not established" finding is supported by some credible evidence and is not arbitrary, capricious, or unreasonable, we affirm.

Bill is the adult foster brother of Nora, who was born in December 2007. Nora's adoptive mother, C.A. passed away, and Nora's adult sister, M.D. (Molly) adopted her and Nora's other sister, N.R.-A. (Nancy). Nora and Nancy live with Molly, her husband, E.D., and their biological children.

In January 2024, an anonymous reporter called the Division and expressed concerns for then sixteen-year old Nora's safety. The reporter stated that Nora disclosed to her cousin that Bill had fondled Nora's breasts and digitally penetrated Nora's vagina while she visited him a few weeks earlier.

A Division investigator visited Molly's house the day it received the report

---

[1] We use initials and pseudonyms in order to protect the privacy interests of the family. R. 1:38-3(d)(12).

A-4073-23

and interviewed Nora with Molly present. According to the Division's records, Nora verbally answered the investigator's questions at times but also simply nodded in response to other questions. After initially denying the account, Nora stated Bill inappropriately touched her and when Molly left the room, Nora confirmed Bill had digitally penetrated her vagina and fondled her breasts as well as having done so once in the past. Nora also stated she told her cousin about the abuse.

The Division investigator also spoke with Molly and Nancy. Molly stated she asked Bill if Nora could stay with him for a brief period due to Nora's behavioral issues while in Molly's household. Bill agreed, and from December 17, 2023, to January 3, 2024, Nora lived with Bill and his family. Nancy reported that after Nora's stay at Bill's house, Nora disclosed Bill had "touched her vagina through her shorts and grabbed her chest."

On March 12, 2024, Nora was referred to the CARES Institute at Rowan Medicine, a regional treatment and diagnostic center established to address the needs of neglected and abused children, N.J.S.A. 9:6-8.99, for an evaluation and possible treatment related to her disclosure. Nora refused a genital examination, but was interviewed by medical professionals.

Nora informed a doctor at CARES that Bill abused her for the first time

A-4073-23

when she was eight or nine years old. She stated he digitally penetrated her vagina with his finger and after she informed him he was hurting her, she stated he stopped and went outside to smoke.

In the second, more recent incident, Nora stated after members of Bill's household had gone to sleep, he approached her from behind on the couch and began touching her. She repeated Bill again digitally penetrated her vagina and fondled her breasts and she did not say anything or move during the incident. Bill walked away, washed his hands, and left to smoke a cigarette.

Nora explained that she felt uncomfortable during the incident and had trouble falling asleep that night. When asked what she would like to say to Bill, Nora responded "[f]uck you." After completing Nora's evaluation, a CARES doctor recommended that Nora be referred to "trauma-informed mental health services."

The Division also interviewed Bill approximately a week later and learned that he lives with his girlfriend, their biological child, and two children from a separate relationship. Bill confirmed that Nora recently stayed with him and his family. He denied the allegations and attributed Nora's statements to her being upset with him because he informed Molly that Nora was sexually active with boys from her school.

A-4073-23

The Division interviewed Molly a second time when she confirmed none of the children had contact with Bill since the incident. Molly also declined Division services, instead electing to obtain them on her own. The Division closed its case, but provided the Camden County Prosecutor's Office with the CARES report. The prosecutor declined to pursue the matter and advised the Division to reach out to Camden County Police Department to inquire if they would investigate the matter.

Following the investigation, the Division substantiated Bill for sexual abuse. On May 16, 2024, it notified him of the finding and of his right to challenge it. Bill challenged the Division's finding and, after reconsidering the matter, the Division modified its finding to "not-established." It notified Bill of the change on July 18, 2024.

In its July 18 letter, the Division explained that its "non-established" finding was based on the fact that during the CARES evaluation Nora "made disclosures of sexual abuse-sexual penetration. While these disclosures were seriously considered, the Division was unable to confirm [you] [were] providing routine and repetitive care as defined in the statutes when the act was committed." The notice further informed Bill that he could provide additional information for the Division's consideration, and it would consider any

submitted materials before making its final determination.

Bill continued to dispute the Division's findings and submitted only a July 29, 2024 letter from his counsel, which maintained the "not established" finding does not comport with the requirements articulated by the New Jersey Supreme Court because the Division failed to provide him with the required notice of the evidence that supported the Division's finding. S.C. v. N.J. Dep't of Child. & Fams., 242 N.J. 201, 211 (2020). According to Bill, the Division did not meet its duty to provide him with "a summary of the support for the finding" and instead improperly only "provided a limited version of their findings without any tangible evidence." He maintained "such a bald record" cannot possibly afford Bill meaningful notice "necessary in order to protect . . . the basics of due process."

In its August 5, 2024 response, the Division informed Bill it had reviewed his supplemental submission and arguments but would not be "changing the "[n]ot [e]stablished" finding as the information submitted did not alter" its investigatory conclusion. This appeal followed.

The Division "is charged with the responsibility to investigate all allegations of child abuse or neglect." S.C. v. N.J. Dep't of Child. & Fams., 242 N.J. at 211. After the Division completes its investigation, it makes one of four

possible findings: "substantiated," "established," "not established," or "unfounded." N.J.A.C. 3A:10-7.3(c); S.C., 242 N.J. at 211. A "substantiated" or "established" finding is one in which "the preponderance of evidence indicates that [the] child is an 'abused or neglected child' as defined in N.J.S.A. 9:6-8.21." N.J.A.C. 3A:10-7.3(c)(1) and (2).

By contrast, a "not established" finding is one in which "there is not a preponderance of the evidence that [the] child is an abused or neglected child . . ., but evidence indicates that the child was harmed or was placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(3). Our Supreme Court has explained that a "not established" finding requires some "credible evidence" that the child was harmed or placed at risk of harm. S.C., 242 N.J. at 239. The Court has also explained that the Division's "finding" is not based on "adjudicated facts . . .; rather, it merely ascribes what functions as a working label to the evidence collected through investigation." Id. at 235.

"Thus, a 'not established' finding ... differ[s] from an 'established' or 'substantiated' finding of abuse or neglect [in] two ways: first, relating to the quantum of evidence, and second, the nature of the finding." N.J. Dep't of Child. & Fams. v. R.R., 454 N.J. Super. 37, 41 (App. Div. 2018). "[I]n a 'not established' finding, that lesser quantum of evidence 'indicates' only [the] child

'was harmed or was placed at risk of harm,' and does not establish the child was an 'abused or neglected child' under N.J.S.A. 9:6-8.21(c)." Id. at 42 (quoting N.J.A.C. 3A:10-7.3(c)(3)). Indeed, "placing a child 'at risk of harm' may involve a lesser risk than the 'substantial risk of harm' or 'imminent danger' required to establish abuse or neglect under the statute." Ibid. If "the evidence indicates that a child was not harmed or placed at risk of harm," the allegation is deemed "unfounded." N.J.A.C. 3A:10-7.3(c)(4).

A record containing a "not established" finding is required to be retained by the Division. Although the record is confidential, it is subject to disclosure in certain circumstances pursuant to N.J.S.A. 9:6-8.10(a). S.C., 242 N.J. at 228-29. By contrast, an "unfounded" finding is subject to expunction. N.J.A.C. 3A:10-7.7(b).

Our Supreme Court has held that due process does not require an adjudicatory proceeding to make a determination of "not established" because the Division's findings are only investigatory findings. Nevertheless, the Court has also held that the Division must provide meaningful notice of its finding of "not established" and afford "the investigated subject an informal opportunity to be heard by the agency before the investigatory finding is finalized." S.C., 242 N.J. at 238. In that regard, the Court has stated that the notice "should include

8

a summary of the support for the finding, and the [Division's] reasoning should be transparently disclosed." Id. at 238-39. "Moreover, the individual must be informed of his or her opportunity to rebut the [Division's] conclusion or supplement the record so that the informal opportunity to be heard before the agency is not illusory." Id. at 239.

The scope of our review of a final agency decision is limited. In re Stallworth, 208 N.J. 182, 194 (2011). We "must defer to an agency's expertise and superior knowledge of a particular field," Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992), and "extend substantial deference to an 'agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible' based on the agency's expertise." R.R., 454 N.J. Super. at 43 (quoting In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004)). Nevertheless, when an agency's decision is not accompanied by the necessary findings of fact, we generally remand the matter to provide the agency the opportunity to correct the deficiency. See DiMaria v. Bd. of Trs. Pub. Emps.' Ret. Sys., 225 N.J. Super. 341, 347 (App. Div. 1988).

Before us, Bill argues that the Division's decision was arbitrary, capricious, and unreasonable because its investigation did not yield the quantum of credible evidence required to sustain the finding of "not established," and,

therefore, he was entitled to a finding of "unfounded." Bill specifically contends that the agency failed to make a showing by a preponderance of evidence that Nora has been abused or neglected, and its investigatory findings violated his due process rights.

As noted, we are satisfied there is some credible evidence to support the Division's "not established" finding and reject Bill's arguments on that point. Nora's CARE evaluation, performed after the Division concluded multiple interviews, including one with Bill, and upon which the Division expressly based its revised "not established" finding, considered her claims that Bill sexually assaulted her on two occasions, one of which included the December 2023 assault. As a result of her disclosures and other statements, the physician conducting the CARE evaluation recommended Nora receive a referral for trauma-focused therapy. Bill also does not dispute Nora was in his care during the December 2023 to January 2024 time period, nor does he specifically contest the "not established" finding on that basis.

Nothing in the administrative record supports his contention Nora's credibility should be questioned sufficient for us to override the Division's discretionary decision. Although he maintains Nora made the allegations to retaliate against him for reporting her behavior to Molly, the Division was aware

of his contention having interviewed Bill and, as we discern from the record, was unsatisfied his assertion warranted an "unfounded" finding in light of the CARES evaluation. We are therefore satisfied "some evidence" existed to support the Division's finding.

We also reject Bill's claims he was denied procedural or substantive due process in the context of the investigation, or the Division's final decision, or his contention the Division's "not established" finding is functionally indistinguishable from a Title Nine abuse and neglect determination. In S.C., the Court addressed the constitutional due process concerns implicated in connection with the Division's review of abuse or neglect allegations. S.C., 242 N.J. at 230-35. The Court noted our case law has repeatedly characterized determinations of "not established" as being investigatory rather than adjudicatory in nature, and explained findings of "not established" involve "no determination of ... accuracy," but only "interviews and 'other available evidence' followed by a review and analysis of the information." Id. at 233 (quoting In re R.P., 333 N.J. Super. 105, 117 (App. Div. 2000)).

S.C. explained the Division "has not adjudicated facts or reached any sort of conclusion about what actually occurred when it applies a "not established" finding; rather it merely ascribes what functions as a working label to the

evidence collected through investigation." Id. at 235. Further, a party's due process rights can be satisfied through: "(1) meaningful notice of the Department's planned investigatory conclusion of a "not established" finding and (2) affording the investigated subject an informal opportunity to be heard by the agency before the investigatory finding is finalized." Id. at 238.

Here, the Division followed the procedures enumerated in S.C. It provided "meaningful notice" of its "not established" finding, an "informal opportunity to be heard," and provided the reasons for its conclusion. It also invited Bill to submit supplemental information before the agency issued its final determination and considered the submissions by his counsel. Any claim Bill was entitled to a formal hearing is without merit as the Division's finding was investigatory and not adjudicatory.

To the extent we have not addressed a particular argument, it is because either our disposition of the appeal renders it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

12                                                                          A-4073-23