**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4290-18T1

L.K. and T.K.,
on behalf of minor child, A.K.,

     Petitioners-Appellants,

v.

BOARD OF EDUCATION OF THE
TOWNSHIP OF MANSFIELD,
BURLINGTON COUNTY,

     Respondent-Respondent.

_____

Argued September 14, 2020 – Decided  November 2, 2020

Before Judges Mayer and Susswein.

On appeal from the New Jersey Commissioner of Education, Docket No. 82-3/16.

David R. Giles argued the cause for appellants.

Casey P. Acker argued the cause for respondent Board of Education of the Township of Mansfield, Burlington County (Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC; attorneys, Casey P. Acker on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Sadia Ahsanuddin, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioners L.K. and T.K. appeal from a final decision by the Commissioner of Education, affirming the determination by the Mansfield Township school board (Board) that their seven-year-old daughter, A.K., harassed, intimidated, or bullied a fellow second-grade classmate, N.V.[1] N.V., who was born a male, was transitioning from expressing herself as male to female.[2] The allegations of harassment, intimidation, and bullying (HIB) stemmed from A.K. asking N.V. inappropriate questions concerning N.V.'s gender expression as a female.

Petitioners contend they were denied due process during the initial adjudicatory process before the Board. They assert they should have been afforded the same procedural rights that apply when a student faces a long-term suspension, including the right to cross-examine witnesses at the Board hearing.

---

[1] We use initials to refer to the petitioners and the children involved to protect their privacy.

[2] Throughout the record, N.V. was referred to with masculine personal pronouns. We choose instead to use the personal pronoun consistent with her gender expression and preference.

A-4290-18T1

We disagree. The framework for adjudicating HIB allegations is set forth in the Anti-Bullying Bill of Rights Act (ABR), N.J.S.A. 18A:37-13 to -47 and administrative code promulgated by the Commissioner of Education as authorized by the State Board of Education. We are satisfied those procedures meet constitutional requirements.

Petitioners also contend that the Commissioner abused his discretion in affirming the Board's determination that A.K. engaged in HIB, as defined in N.J.S.A. 18A:37-14. Our review of the record shows the Board presented testimonial evidence that, if found credible, would establish that A.K. engaged in HIB based on N.V.'s gender identity and expression. However, the Administrative Law Judge (ALJ) who presided over the five-day plenary hearing discounted the credibility of some of the testimony, concluding that the Board relied heavily on uncorroborated evidence. Most notably, the ALJ concluded that the Board failed to corroborate its determination that A.K. persisted in questioning, teasing, and threatening N.V. after school staff and her mother told her that this behavior was hurting N.V. and needed to stop.

Although a single wrongful act can constitute HIB, in this instance it is clear from the Commissioner's final decision that the determination A.K. engaged in HIB was predicated on the finding that A.K. persisted in questioning

N.V. about her gender identity after the initial school bus incident. In other words, the Commissioner's decision presupposed that A.K. engaged in repetitive conduct after being counseled to stop. However, that critical finding is contrary to the factual finding made by the ALJ. The final agency decision fails to explain why the Commissioner rejected the ALJ's assessment of the credibility of the evidence presented by the Board, as required by the Administrative Procedures Act (APA), N.J.S.A. 52:14B-10(c). We therefore are constrained to remand the matter to the Commissioner to make explicit findings as to whether the ALJ's assessment of the testimony regarding A.K.'s allegedly persistent conduct was arbitrary, capricious, or unreasonable, or was not supported by sufficient, competent, and credible evidence in the record.

## I.

We presume the parties are familiar with the procedural history and circumstances leading to this appeal. We therefore only briefly summarize the relevant facts. The parties do not dispute that A.K. questioned N.V. about wearing a dress while riding together on the school bus. The Board determined that the following day, A.K. teased and intimidated N.V. in the school lunchroom despite having previously been told not to question N.V. about her clothing or appearance. Relying on this allegation of repeated conduct, the

A-4290-18T1

Board determined that A.K. engaged in HIB.[3]  In contrast to the initial school bus event, the parties continue to dispute the nature and circumstances of the second purported incident in the cafeteria.

---

[3]  HIB is defined as:

> any gesture, any written, verbal or physical act, or any electronic communication, whether it be a single incident or a series of incidents, that is reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic, that takes place on school property, at any school-sponsored function, on a school bus, . . . that substantially disrupts or interferes with the orderly operation of the school or the rights of other students and that:
>
>> a. a reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his person or damage to his property.
>>
>> b. has the effect of insulting or demeaning any student or group of students; or
>>
>> c. creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student.

5

Petitioners filed a verified petition of appeal with the Commissioner challenging the Board's decision and seeking to expunge the Board's HIB determination from A.K.'s school files as well as from the files maintained by the State. The matter was submitted to an ALJ as a contested case.

The ALJ convened a plenary hearing over the course of five days in late 2017 to early 2018. The Board presented testimony from five witnesses: (1) the principal of A.K. and N.V.'s elementary school; (2) the school's anti-bullying specialist; (3) the attorney who represented the Board during the course of this matter; (4) a member of the Board; and (5) the school district's superintendent. Petitioners presented a single witness, T.K., who is A.K.'s mother.

After receiving post-hearing submissions, the ALJ rejected petitioners' contention that they were not afforded adequate due process during the hearing before the Board. The ALJ also concluded in her thirty-eight-page initial decision that the school district's investigation was riddled with mistakes and was deficient with respect to the cafeteria incident. In doing so, the ALJ made detailed findings regarding the credibility of the testimony presented by the

[N.J.S.A. 18A:37-14.]

Board and concluded the Board's decision was arbitrary, capricious, and unreasonable.

Both parties filed exceptions to the ALJ's initial decision. On April 22, 2019, the Commissioner issued a final decision rejecting the ALJ's initial decision in part and concluded that the Board's determination that A.K. committed an act of HIB was not arbitrary, capricious, or unreasonable.

## II.

We first address petitioners' contention that the statutory and regulatory framework for adjudicating allegations of HIB affords inadequate due process. Those procedures are set forth in N.J.S.A. 18A:37-15 and N.J.A.C. 6A:16-7.7.

When school officials receive a report of HIB, the statute requires:

> [I]nvestigation shall be initiated by the principal or the principal's designee within one school day of the report of the incident and shall be conducted by a school anti-bullying specialist. The principal may appoint additional personnel who are not school anti-bullying specialists to assist in the investigation. The investigation shall be completed as soon as possible, but not later than 10 school days from the date of the written report of the incident of harassment, intimidation, or bullying. In the event that there is information relative to the investigation that is anticipated but not yet received by the end of the 10-day period, the school anti-bullying specialist may amend the original report of the results of the investigation to reflect the information[.]

[N.J.S.A. 18A:37-15(b)(6)(a).]

Following the investigation, the school principal and the anti-bullying specialist make a preliminary determination as to whether the incident involves HIB conduct as defined in N.J.S.A. 18A:37-14. N.J.A.C. 6A:16-7.7(a)(ix)(1). That preliminary determination must be provided to the superintendent of schools within two days of completing the investigation. N.J.S.A. 18A:37-15(b)(6)(b). The superintendent may then "decide to provide intervention services, establish training programs to reduce harassment, intimidation, or bullying and enhance school climate, impose discipline, order counseling as a result of the findings of the investigation, or take or recommend other appropriate action." Ibid.

This stage is when the school board first becomes involved in the HIB adjudicatory process. The board must receive the results of the investigation "no later than the date of the board of education meeting next following the completion of the investigation, along with information on any services provided, training established, discipline imposed, or other action taken or recommended by the superintendent." N.J.S.A. 18A:37-15(b)(6)(c). When the board next meets after receipt of the report, the statute requires the board to

"issue a decision, in writing, to affirm, reject, or modify the superintendent's decision."  N.J.S.A. 18:37-15(b)(6)(e).

The statute further provides that before the board makes an HIB determination, the

> parents or guardians of the students who are parties to the investigation shall be entitled to receive information about the investigation, in accordance with federal and State law and regulation, including the nature of the investigation, whether the district found evidence of harassment, intimidation, or bullying, or whether discipline was imposed or services provided to address the incident of harassment, intimidation, or bullying.
>
> [N.J.S.A. 18A:37-15(b)(6)(d).]

After receiving notice, parents or guardians are afforded sixty days to apply for a hearing before the board of education "concerning the written information about a harassment, intimidation, or bullying investigation, pursuant to N.J.S.A. 18A:37-15(b)(6)(d)."  N.J.A.C. 6A:16-7.7(a)(xi)(1).  The board must convene a hearing within ten days of receiving such a request.  N.J.S.A. 18A:37-15(b)(6)(d).  During the hearing, "the board may hear from the school anti-bullying specialist about the incident, recommendations for discipline or services, and any programs instituted to reduce such incidents."  Ibid.

Petitioners posit that the consequences of an HIB finding are comparable to a long-term suspension, and students charged with HIB should accordingly be afforded comparable procedural rights.[4]  They note the framework for adjudicating long-term suspensions is different from the framework for adjudicating HIB determinations.  Specifically, students facing a long-term suspension are provided pre-hearing notice of the specific testimony and charges against the student and are afforded the right to confront and cross-examine the witnesses against them at a school board hearing.[5]  N.J.A.C. 6A:16-7.3(a)(10)(ii), (a)(11).  Petitioners ask us to engraft those additional procedural rights onto the process for adjudicating HIB allegations.  We decline to do so.

Petitioners cite no precedent to support their request that we rewrite the adjudicatory procedures specified in the ABR and administrative code to incorporate procedures used in long-term suspension proceedings for HIB proceedings.  Petitioners' constitutional argument, rather, is based on their assertion that the potential impact of an HIB determination on a future college

[4]  A long-term suspension means a suspension from school of ten or more days. N.J.A.C. 6A:16-7.3(a).

[5]  Of course, petitioners had the right to cross-examine the Board's witnesses at the plenary hearing before the ALJ as part of the administrative appeal of the Board's determination.

application is "far more deleterious" than a short-term suspension. We do not embrace that proposition.

We do not dispute that "[w]hat due process requires depends in part on 'the private interest at stake[.]'" In re R.P., 333 N.J. Super. 105, 115 (App. Div. 2000). We disagree, however, that the interests at stake in HIB hearings are invariably comparable to the interests at stake in long-term suspension hearings. Petitioners' supposition that their daughter may suffer future harm from the HIB determination is simply too speculative to raise constitutional concern. HIB determinations are confidential and not readily accessible by the public. Petitioners have not presented any evidence to show that the HIB determination will be revealed years from now if and when A.K. applies for college, or that the HIB charge sustained against her as a second-grader, if revealed, will jeopardize her prospects for college admission.

In view of the speculative nature of petitioners' future harm argument, we decline to substitute our judgment for that of the Legislature. The Legislature in enacting the ABR, as well as the Commissioner and State Board of Education in promulgating the corresponding provisions of administrative code, were free to mirror the procedures that are used when adjudicating long-term suspensions. They chose not to.

We add the requirements of due process balance the private interests at stake against fiscal and administrative burdens. See id. at 115 ("What due process requires depends in part on 'the private interest at stake' and on 'the fiscal and administrative burdens . . . additional procedural safeguards would entail.'" (quoting J.E. ex rel. G.E. v. Dep't of Human Servs., 131 N.J. 552, 566–67 (1993)). The additional administrative burdens of affording a trial-like forum at school board hearings to adjudicate all HIB allegations could be substantial.

A school's response to an HIB incident is tailored to the circumstances and need not entail discipline rising to the level of a suspension.[6] In any case where the seriousness of the HIB conduct warrants a long-term suspension, the student facing discipline would certainly be entitled to the procedural rights that petitioners now seek. To demand a trial-like hearing in all HIB cases, however, would in many cases impose an administrative burden incommensurate with the interests at stake. We are not convinced, moreover, that the Due Process Clause requires subjecting a seven-year old HIB victim to cross-examination at a school board hearing. We therefore conclude that the HIB adjudicatory framework set forth in the ABR and administrative code adequately protects the rights of students alleged to have committed HIB.

---

[6] In this instance, A.K. was not suspended but rather received detention.

III.

We next address petitioners' contention that the Board and the Commissioner abused their discretion in determining that A.K. engaged in HIB conduct. In addressing that contention, we focus on the Commissioner's rejection of the ALJ's conclusion that the Board's determination was arbitrary, capricious, or unreasonable.

The ALJ noted that "[t]he majority of the facts [were] not in dispute[,] [but] there [were] some disputed facts that . . . require[d] a credibility analysis." The ALJ found that the investigation and substantive case of HIB against A.K. suffered from mistakes and deficiencies. In this vein, the ALJ reasoned that "[t]he Board decision was not made in bad faith; however, it was made with reliance on faulty information of the circumstances that led to the HIB determination and incorrect statements of the law."

When analyzing some of the investigation's mistakes and deficiencies, the ALJ further observed that the Board's witnesses "often contradicted each other," which made it difficult to understand what happened between A.K. and N.V. and whether HIB continued after the bus incident. The ALJ found, for example, the Board's witnesses "confused information that they received from [N.V.'s] mother with information they received from students."

A-4290-18T1

The ALJ carefully explained why she discounted the testimony of the school principal and anti-bullying specialist with respect to the cafeteria incident, finding that their testimony was not sufficiently reliable and credible. The ALJ concluded the cafeteria incident was uncorroborated. The ALJ further concluded that there was insufficient evidence that A.K. continued to question or threaten N.V. The ALJ thus viewed the case as a single corroborated event of questioning by A.K.—the school bus incident—that caused N.V. to become upset.

The ALJ also determined there was insufficient evidence indicating that A.K. substantially disrupted or interfered with N.V.'s rights or that she knew or should have known she would emotionally harm N.V. The ALJ noted A.K. and N.V. have largely overcome any tension between them—indeed, the record reflects that they have become friends who play together. Further, the ALJ noted that N.V. even invited A.K. to attend her counseling sessions. The ALJ ultimately concluded that A.K.'s conduct was not HIB.

The Commissioner rejected the ALJ's thirty-eight page written opinion in his own four-page final agency decision. In that decision, the Commissioner found:

> A.K. admitted that she <u>repeatedly</u> questioned N.V. and
> made comments to him about his name, his hair, and

the clothing he wore.  <u>A.K. persisted despite warnings from school staff that such remarks were unacceptable, and instructions from her mother to discontinue</u>.  In addition to her harassment of N.V., A.K. threatened N.V. regarding his reporting of her behavior, which was verified by N.V. during the course of the HIB investigation.  It is clear from the record that A.K.'s behavior was motivated by N.V.'s gender identity and expression.  Moreover, A.K.'s conduct took place on the school bus and on school grounds, and consequently interfered with N.V.'s rights and the rights of other students.  In fact, for a period of time, N.V.'s parents drove him to school because he did not want to ride on the same bus as A.K.  A.K.'s behavior was not only demeaning to N.V., but also caused him emotional harm and created a hostile educational environment.  Although the Commissioner [was] mindful that A.K. was only seven years old at the time of the incidents, the Commissioner [found] she should have known that her <u>persistent conduct</u> was causing emotional harm to N.V. given <u>that she was repeatedly counselled that her behavior was not appropriate</u>.  Therefore, the Board's determination that A.K. committed an act of HIB was not arbitrary, capricious[,] or unreasonable.

[emphasis added.]

As we have noted, although HIB can be established based on a single incident, in this instance, it is clear from the underscored portions of the final agency decision that the Commissioner found that A.K. continued to engage in HIB conduct after the school bus incident and after being counseled to stop.  We presume this finding of fact is critical to the conclusion by the Board and the

15

Commissioner that A.K.'s conduct rose to the level of HIB as defined in N.J.S.A. 18A:37-14. The Commissioner's final decision, however, does not acknowledge that the ALJ reached a contrary conclusion much less explain the reasons for rejecting the ALJ's assessment of the credibility of the Board's witnesses.

The scope of our review of an administrative agency's final decision is limited. In re Hermann, 192 N.J. 19, 27 (2007). The "final determination of an administrative agency . . . is entitled to substantial deference." In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J. 533, 541 (2016) (citing Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Envtl. Prot., 191 N.J. 38, 48 (2007)); see also In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (finding a "'strong presumption of reasonableness attaches to the actions of the administrative agencies.'" (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994))). An appellate court "ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008); see also Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (noting that the abuse-of-discretion standard is established

"when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'") (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985))).

When a contested case is submitted to the Office of Administrative Law for a hearing, the agency head must review the record submitted by the ALJ and give attentive consideration to the ALJ's initial decision. N.J. Dep't of Pub. Advocate v. N.J. Bd. of Pub. Utils., 189 N.J. Super. 491, 500 (App. Div. 1983). The agency head nonetheless remains the primary factfinder and maintains the ultimate authority to reject or modify findings of fact, conclusions of law, or interpretations of agency policy. Id. at 507 (citing N.J.S.A. 52:14B-10(c)).

Even so, ALJs are not mere conduits for transmitting evidence to the agency head, and they should not be considered "second-tier players or hold an inferior status as factfinders." In re Hendrickson, 235 N.J. 145, 160 (2018). "When an ALJ has made factual findings by evaluating the credibility of lay witnesses, the [agency head] may no longer sift through the record anew to make its own decision[.]" Cavalieri v. Bd. of Trs. of Pub. Emps. Ret. Sys., 368 N.J. Super. 527, 534 (App. Div. 2004).

A-4290-18T1

Accordingly, when an agency head strays from the factual findings of an ALJ, we need not accord the agency head the level of deference we ordinarily recognize in reviewing final administrative decisions. See H.K. v. State of N.J. Dep't of Human Servs., 184 N.J. 367, 384 (2005) (noting that it is "not for . . . the agency head to disturb" ALJs' credibility determinations based upon live witness testimony); Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587–88 (1988) (declining to defer to the agency head's assessment of witness credibility when the ALJ was the one who heard live testimony).

Furthermore, and of special significance in this appeal, an agency head may not reject or modify findings of fact as to issues of credibility of lay witness testimony unless the agency head first determines from a review of the record that the ALJ's findings "are arbitrary, capricious or unreasonable or are not supported by sufficient, competent, and credible evidence in the record." N.J.S.A. 52:14B-10(c). If the Commissioner chooses to exercise his authority to reject or modify findings, under this statute he must first "state clearly [and with particularity] the reasons for doing so." Ibid. The Commissioner was thus obligated in this instance to make findings to justify departing from the ALJ's credibility assessments concerning whether A.K. engaged in repetitive conduct

following the initial school bus incident and whether that conduct substantially disrupted or interfered with N.V.'s rights.

The Commissioner failed to follow the decision-making framework spelled out in the APA. We therefore remand for the Commissioner to determine whether the ALJ's findings with respect to the allegations of persistent conduct and the impact of A.K.'s conduct on N.V. were arbitrary, capricious or unreasonable or were not supported by sufficient, competent, and credible evidence in the record.

We note the ALJ provided a thorough analysis of the evidence presented by the Board and explained in detail why she found that some of the testimony lacked credibility. The ALJ highlighted, for example, specific errors made by school officials in conducting the cafeteria incident investigation, and also identified specific inconsistencies in the witness's testimony. If the Commissioner on remand determines that the ALJ's credibility assessment of the relevant testimony warrants rejection, we would expect the revised final decision to explain in comparable detail why the ALJ's assessment of the testimony was deficient. Any such findings, in other words, must comply with the "particularity" requirement set forth in N.J.S.A. 52:14B-10(c), so as to permit appropriate appellate review if needed.

The remainder of petitioner's arguments asserted in the appeal lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION