OSTRER, J.A.D.
*39 Defendant R.R. appeals from the finding of the Division of Child Protection and Permanency that allegations he abused or neglected his then seven-year-old daughter E.R. were "not established." N.J.A.C. 3A:10-7.3(c)(3). One might wonder why a person would appeal such an apparently favorable finding, but the meaning of "not established" is not what it seems. As we discuss, it still permanently tars a parent with a finding that there was something to the allegation.
The allegations pertained to an incident in which R.R. tried to stop his daughter from throwing a tantrum. He grabbed her by the arms. She broke free, struck a bed or a wall, and fell to the floor, without injury. The finding was set forth in a letter signed *40 by the Division's intake worker, who conducted the field investigation, and the worker's field office supervisor.[2] Having considered defendant's arguments in light of the factual record and the governing legal standard, we reverse.
I.
We first review the legal nature of a "not established" finding. The finding is one of four outcomes the Division may reach after investigating an abuse or neglect allegation. See N.J.A.C. 3A:10-7.3(c)(1)-(4) ; Dep't of Children & Families v. D.B., 443 N.J. Super. 431, 441-42, 129 A.3d 332 (App. Div. 2015) (discussing four-tier framework of "substantiated", "established", "not established", and "unfounded" allegations); see also 44 N.J.R. 357(a) (Feb. 21, 2012) (initial rule proposal); 44 N.J.R. 2437(a) (Nov. 5, 2012) (notice of substantial change); 45 N.J.R. 738(a) (Apr. 1, 2013) (final rule adoption).
"An allegation shall be 'not established' if there is not a preponderance of *116 the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(3) (emphasis added). A parent is completely cleared of wrongdoing only if the allegation is "unfounded," that is, "if there is not a preponderance of the evidence indicating that a child is an 'abused or neglected child' ... and the evidence indicates that a child was not harmed or placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(4).[3] The Division must indefinitely *41 retain on file the record of "not established" findings. N.J.A.C. 3A:10-8.1(b). But, records related to "unfounded" findings are generally expunged. See N.J.A.C. 3A:10-8.1(a), - 8.3.
By contrast, both "substantiated" and "established" allegations involve findings by "the preponderance of the evidence ... that a child is an 'abused or neglected child' " under the statute. N.J.A.C. 3A:10-7.3(c)(1), -7.3(c)(2).[4]
Thus, a "not established" finding may differ from an "established" or "substantiated" finding of abuse or neglect two ways: first, relating to the quantum of evidence, and second, the nature of the finding. To defeat a preponderance-of-the-evidence finding, the evidence that a child was not abused or neglected must be at least equal to or greater than the evidence the child was abused or neglected. See N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 615, 992 A.2d 20 (App. Div. 2010) (stating, under a preponderance-of-the-evidence standard, a litigant must establish that the "desired inference is more probable than not," and evidence "in equipoise" does not satisfy the litigant's burden (quoting Liberty Mut. Ins. Co. v. Land, 186 N.J 163, 169, 892 A.2d 1240 (2006) ). As the Department of Children and Families explained in adopting the regulation, "not established findings are based on some evidence, though not necessarily a preponderance of evidence, that a child was harmed or placed at risk of harm." 45 N.J.R. 738(a) (response to Comment 86).
*42 Second, in a "not established" finding, that lesser quantum of evidence "indicates" only a child "was harmed or was placed at risk of harm," and does not establish the child was an "abused or neglected child" under N.J.S.A. 9:6-8.21(c). N.J.A.C. 3A:10-7.3(c)(3).[5] In particular, placing a child "at risk of harm" may involve a lesser risk than the "substantial *117 risk of harm" or "imminent danger" required to establish abuse or neglect under the statute. As the Department explained, "Where utilized, 'evidence indicates' refers to a child having been harmed or placed at risk of harm. This is a lesser standard than satisfaction of the statutory requirement in N.J.S.A. 9:6-8.21." 45 N.J.R. 738(a) *43 (response to Comment 45). A "not established" finding means "a preponderance of the evidence indicates that the statutory standard has not been met ...." Ibid.
Notably, although the regulation utilizes a passive construction-"was harmed or was placed at risk of harm"-the apparent intent is to attribute the harm or the placement at risk of harm to a particular perpetrator. Cf. N.J.A.C. 3A:10-7.2 (requiring notification to alleged perpetrator upon investigation of reported abuse or neglect). Similarly, an "unfounded" finding means the evidence indicates the alleged perpetrator did not harm the child or place the child at risk of harm. N.J.A.C. 3A:10-7.3(c)(4).
II.
We must determine whether the "not established" finding was clearly "arbitrary, capricious, or unreasonable," or lacked "fair support in the record." Dep't of Children & Families v. T.B., 207 N.J. 294, 301, 24 A.3d 290 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28, 926 A.2d 350 (2007) ); see also D.B., 443 N.J. Super. at 440, 129 A.3d 332 (applying the "arbitrary, capricious, or unreasonable" standard of review to a "not established" finding). We extend substantial deference to an "agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible" based on the agency's expertise. In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89, 852 A.2d 1083 (2004). However, we ultimately are not bound by the Division's strictly legal determinations. Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973).
With this standard of review in mind, we turn to the Division's investigation and finding. The Division undertook its investigation at the request of the Family Part judge presiding over the pending divorce action involving R.R. and his wife, L.R., with whom he still resided. Three days after the incident, L.R. filed an *44 order to *118 show cause (OSC), which temporarily removed R.R. from the home. Although L.R.'s submissions are not before us, we presume L.R. recounted details of the incident in an appropriate certification or affidavit. On the return date, the court entered an order vacating the OSC and permitting R.R. to return to the home. The court ordered the Division to "immediately investigate [the] family to determine whether: 1) child abuse exists, and 2) the children's safety and well-being [is] jeopardized by either parent or both parents." (Emphasis added). The Division was required to provide the court with its findings.
As best we can tell from the screening summary that the Division thereafter prepared, a court staff member called the Division to refer the matter. There is no indication that the referent provided, or the Division requested: the OSC; L.R.'s submission; R.R.'s response, if any; a transcript of the hearing on the return date; or the court's order.[6]
As recorded by the screening worker, the court's concerns were inaccurately conveyed as pertaining only to R.R. The screening summary also inaccurately identified the child involved, referring to E.R.'s then ten-year-old sister, Le.R. The screening summary stated:
The mother appeared in court today on an "Order to Show Cause" that she filed to have the father removed from the home. The mother states that ... the father pushed [Le.R.] and she hit her head on the bed. The father denies pushing [Le.R.] and states that he grabbed [Le.R.] because she was having a tantrum and when he let her go she fell backwards. Reportedly, [Le.R.] was throwing things at the father and her younger siblings, which appears to be a common occurrence at the home. The mother states that she and the younger siblings were in the room during the incident and the mother observed the father push [Le.R.]. Reporter denied [Le.R.] being injured or needing medical attention at the time. The siblings were not injured during the incident.
*45 [The judge] is requesting that [the Division] investigate these concerns today because [Le.R.] is leaving for summer camp in Pennsylvania tomorrow morning and will be away for the entire summer.
The worker then followed up at the home and interviewed the parents, Le.R., and E.R. A third child was too shy to speak to the worker. Le.R. told the worker that her parents often argued, but they never hit each other, and they never hit her or her sisters. Le.R. made it clear to the worker that she was not the child who was throwing things, and who was grabbed by the arm by her father. She reported that E.R. threw a temper tantrum "a few weeks ago," which varied in key details from the one her parents later described to the worker.
E.R. recalled the incident in response to the worker's inquiry. She admitted that she was throwing things around the house and her father grabbed her. She said her father did not hit her, and she could not remember if he pushed her into the wall. She could not recall what happened after that because she passed out. Asked more *119 generally if her father ever hit her, E.R. said he had, but could not remember when. She said she never saw her father hit her other sisters.
L.R. did not hide her motivation to remove R.R. from the home. She complained that tension between the two of them had risen, and sought the worker's assistance in securing R.R.'s removal. She said that the judge thought she was making things up to hinder R.R. in court, but denied she had done so. She disabused the worker of the notion that the incident involved Le.R. She stated that R.R. did not push Le.R. or anyone else into the wall. She also admitted that R.R. never hit the children, or her, but that he had often raised his voice to the children.
According to the investigation summary, L.R. explained that the incident occurred when "[E.R.] was having an episode and her father was trying to take control of the situation and couldn't.... [H]e grabbed [E.R.] by the hands/wrist and [E.R.] was flailing her arms and body and the next thing you know she fell into the wall *46 and hit her head." L.R. alleged that while R.R. did not push E.R., "his aggressive behavior caused her to fall."
R.R. explained the incident occurred when he returned home with Le.R., after taking her out for ice cream. Apparently jealous of her sister, E.R. threw a tantrum. She hurled things around the home. As R.R. tried to calm her, she threw a shoe at him and Le.R., and continued to scream and yell. Rather than assist R.R., L.R. video-recorded the incident.[7] R.R. grabbed E.R.'s hands to prevent her from throwing anything else. She broke free and fell. R.R. said she was nowhere near the wall. Rather, she fell into the side of a bed. She then passed out for about a minute, because she was so overheated. She suffered no injuries. L.R. called the police, who assessed the situation, and left without any arrests and without calling for any medical assistance.
The worker also obtained reports from the children's pediatrician, who reported they were in good health and expressed no concerns about their safety.
The findings set forth in the investigation summary stated:
There is not a preponderance of evidence indicating that minor child [E.R.] is physically abused, but evidence indicates that minor child was placed at risk of harm. [R.R.] admitted to grabbing [E.R.] in order to prevent her from throwing things at him and her sister. He stated that she did fall down and hit the side of the bed, although she didn't obtain any marks or bruises, child [E.R.] was placed at risk of harm.
The letter informing R.R. of the "not established" finding followed about two months later.
III.
Notwithstanding our deferential standard of review, we are constrained to reverse. The Division's finding was arbitrary and unreasonable, because the Division failed to consider essential documents and relevant facts. The finding also lacked "fair support" of the record the Division did compile.
*47 There is no evidence the Division obtained and reviewed the submissions to the court on the OSC; any testimony presented at the hearing on the return date; the court's order requesting the Division investigate both parents; or the video of *120 the incident. Although the record does not include these documents, it was incumbent upon the Division in this case to consider them as part of a reliable investigation. We are also concerned that the Division's worker and supervisor apparently gave no weight to L.R.'s admitted motivation to secure her husband's removal from the home. We recognize that the Division's regulation governing "requirements for an investigation," N.J.A.C. 3A:10-3.1, does not require review of relevant court documents. See also N.J.A.C. 3A:10-2.4 (evidence needed to support a finding). However, we cannot have confidence in an investigation-nor are we obliged to defer to the resulting finding-where the Division overlooked such relevant information under the circumstances of this case. Cf. In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 386, 80 A.3d 1120 (2013) ("failure to consider all evidence in a record would perforce lead to arbitrary decision making" and a "decision based on a complete misperception of the facts ... would render the agency's conclusion unreasonable"); see also Bailey v. Bd. of Review, 339 N.J. Super. 29, 33, 770 A.2d 1216 (App. Div. 2001) (stating that an appellate court's deference to an agency decision "is premised on our confidence that there has been a careful consideration of the facts in issue").
Furthermore, the court's referral requested an investigation of both parents. However, apparently due to misinformation from the court staffer, and the Division's failure to obtain the court's order, the investigation that followed was one-sided.
The Division's finding that the "evidence indicates ... [E.R.] was placed at risk of harm" by R.R. also lacks fair support in the investigatory record that the Division compiled. The key question was whether there was any evidence that R.R., by any affirmative act or failure to act, "placed [E.R.] at risk of harm." No evidence established that he did. Rather, he did nothing more than attempt *48 to control the situation that E.R. created. When he was unable to calm E.R. with words, and E.R.'s behaviors escalated, he did not resort to corporal punishment, nor is there evidence he used excessive force in attempting to restrain E.R. L.R.'s decision to video-record the incident likely did not help the situation. R.R. held his daughter by the arm, wrist or hand; E.R. broke free, and fell. No doubt, E.R. could have hurt herself as she flailed about in the throes of her tantrum. She also could have hurt another family member, as she hurled shoes and other items around the home. But, R.R. did not create the risk of harm to E.R.
As we find that the Division erred in finding the allegation was "not established," the Division shall deem the allegation to be "unfounded" and treat the records accordingly.
Reversed.

The agency's letter referred to N.J.A.C. 10:129-7.3(c)(3), which was later recodified to title 3A of the N.J.A.C. See 49 N.J.R. 98(a) (Jan. 3, 2017). We will refer to the current citation of the rule at N.J.A.C. 3A:10-7.3(c)(3).

Unlike a finding of "substantiated," see N.J.A.C. 3A:10-7.3(c)(1), the Division's regulations do not permit administrative hearings to review a "not established" finding, or the other two findings. See N.J.A.C. 3A:5-4.3(a)(2). Therefore, we deem it a final decision subject to appellate review under Rule 2:2-3(a)(2). See D.B., 443 N.J. Super. at 442, 129 A.3d 332 ; 45 N.J.R. 738(a) (response to Comments 6 and 7) (expressing intention that regulations provide for no administrative review of "not established" finding).

A "substantiated" finding must be made if, as set forth in N.J.A.C. 3A:10-7.4, the case involved death, near-death, sexual activity, infliction of injury or creation of a condition requiring hospitalization or "significant medical attention"; repetition of physical abuse; failure to take action to protect a child from sexual abuse or repeated physical abuse; or deprivation of necessary care that "caused serious harm or created a substantial risk of serious harm." N.J.A.C. 3A:10-7.3(c)(1). A weighing of aggravating and mitigating factors set forth in N.J.A.C. 3A:10-7.5 may also result in a "substantiated" finding. N.J.A.C. 3A:10-7.3(c)(1).

An "abused or neglected child" is defined as a minor whose parent or guardian:
(1) inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ; (2) creates or allows to be created a substantial or ongoing risk of physical injury to such child by other than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted loss or impairment of the function of any bodily organ; (3) commits or allows to be committed an act of sexual abuse against the child; (4) or a child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian ... to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so, or (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court; (5) or a child who has been willfully abandoned by his parent or guardian ...; (6) or a child upon whom excessive physical restraint has been used under circumstances which do not indicate that the child's behavior is harmful to himself [or herself], others, or property; (7) or a child who is in an institution and (a) has been placed there inappropriately for a continued period of time with the knowledge that the placement has resulted or may continue to result in harm to the child's mental or physical well-being or (b) who has been willfully isolated from ordinary social contact under circumstances which indicate emotional or social deprivation.
[N.J.S.A. 9:6-8.21(c) (emphasis added).]

None of these documents is included in the record before us. Significantly, they are not identified in the Statement of the Items Comprising the Record (SICR). See R. 2:5-4(b). We therefore surmise the Division did not consider them. See Jeffrey S. Mandel, N.J. Appellate Practice, § 22:1-2(e) (2018) (stating that the SICR is designed to "ensure that the parties and the appellate court have a complete understanding of the record at the administrative level").

The video is not in the record before us, nor is there any indication that the Division worker obtained or viewed it.