# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1644-23

A.E.,[1]

     Petitioner-Appellant,

v.

DEPARTMENT OF CHILDREN
AND FAMILIES, DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Respondent-Respondent.

_____

Submitted May 28, 2025 – Decided July 14, 2025

Before Judges Sumners and Bergman.

On appeal from the New Jersey Department of Children and Families, Division of Child Protection and Permanency, Case ID No. 17293844.

A.E., appellant pro se.

---

[1] We use initials and pseudonyms to protect the identity of the interested parties and minor to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

PER CURIAM

A.E. (Albert) appeals from the January 31 and February 1, 2024 final agency decisions of the Division of Child Protection and Permanency (Division) which determined that allegations of abuse or neglect against him reported by his minor daughter were "not established." After our review of the record and applicable legal principles, we conclude the Division's findings were adequately supported by substantial, credible evidence in the record and were not arbitrary, capricious or unreasonable and therefore, we affirm.

I.

Albert and C.A. (Claudia) are the parents of C.E. (Cori), born January 19, 2015. Albert lives in Maryland but exercises parenting time with Cori in New Jersey where his mother also resides. The Division opened two investigations of alleged physical and sexual abuse reported between November 2022 and May 2023. Cori, then aged seven, made repeated allegations of inappropriate conduct by Albert during her visits to his home. The Division ultimately issued "not established" findings in both investigations.

We summarize the facts from the record below.

<u>Division Investigation 21558111</u>

On November 2, 2022, Cori's care management organization (CMO)[2] worker contacted the Division to report that Cori informed her that Albert had only fed her one meal during her weekend visit to his home. The CMO worker also reported that Cori stated Albert forced her to undress outside the bathroom and looked at her "privates."

The next day, the Division investigator spoke with Cori at her school. Cori reported that things were "bad" with her dad because he did not provide her with enough food or play with her. Cori elaborated that she was not allowed to get food from her father's refrigerator and that her father did not provide between-meal snacks. Cori also reported that her father would not let her take her bathrobe or underwear into the bathroom when she showered. She alleged she had seen pictures of women with "big butts and breast[s]" when her father was searching for a video on his phone for her to watch. She stated she disliked that her grandmother had seen her vagina when she dressed in the room they shared. She told the investigator she overheard her grandmother saying "bad

_____

[2] CMO's create, coordinate, and implement individualized service plans for children with emotional and behavioral disturbances that are in need of intensive care coordination services. N.J.A.C. 10:73-3.4-3.5; N.J.A.C. 10:75-1.2.

things" to her father about her mother. She stated she wanted to stop visiting her father.

On November 8, during her monthly check, Cori reported to her CMO that during her visit with Albert, he touched her between her butt and over her clothes when showing her a video on his phone. Cori stated the incident occurred in the living room. The CMO stated this was the first time the child disclosed the incident to her.

On November 16, 2022, the investigator spoke with Albert. He informed the investigator he fed Cori and had taken her to a buffet during her last visit. Albert informed the investigator that on the Sunday she visited, they only had snacks following church because they were busy outside of the home, so he had contacted Claudia to alert her that Cori would be hungry when she arrived home. That same day, the investigator spoke with Claudia who confirmed that Cori had been hungry when she returned from her last visit and that Albert had sent an email alerting her. Claudia told the investigator that Cori informed her that her father requires her go into the bathroom naked, provides her only with a hand towel when she's finished showering, and grabbed her butt while showing her half-naked woman.

A-1644-23

On December 20, 2022, the investigator spoke with Cori at school to address the November 9 report that her father had sexually abused her and the December 18 report that he had hit her. Cori confirmed her father had yelled and hit her on her right rib area after asking her to put her shoes on, and said it still hurt. She also stated he had hit her on her right shoulder and called her a "stupid girl" after asking her to pack her bag. Cori asserted she had been complying with his requests and did not know why he hit her. Her mother checked Cori when she returned home and did not observe any marks or bruises. The investigator did not observe any marks or bruises either.

When the investigator asked about the sexual abuse allegations, Cori described her father rubbing her "butt" when he showed her videos and said it had occurred every visit "since last year" but had not occurred during the most recent visit. Specifically, she stated he put his fingers on her "butt cheeks" and his palm in her "butthole." She reported she moved away from him because the touching made her uncomfortable. She said when she moved away that Albert asked her if she loved him. During these incidents, Cori stated they would be in the living room and her grandmother was in the bedroom. Cori also reported they had spent some of the weekend shopping, but her father said he paid for child support and refused to purchase any of the items she requested.

5

On December 21, 2022, the investigator spoke with Claudia about the allegations of physical abuse. Contrary to Cori's statement, Claudia denied checking her daughter for marks or bruises. She did not respond when asked if she had taken Cori for medical care. She said she had taken her to the emergency room after an early December visit because Cori complained of pain in her vagina and "behind." She asserted the hospital ran tests and provided antibiotics, but she could not find the discharge paperwork to confirm her report.

On December 28, 2022, the investigator spoke with Albert by way of video conference. Albert admitted to raising his voice twice during Cori's visit because she was not complying with his directions. He denied hitting or touching her inappropriately. He asserted his matrimonial case with Claudia was an "ongoing battle" and that Cori's allegations resulted in the court granting Claudia's request to suspend his parenting time. He believed Claudia coached Cori to falsely report he was abusing her because she wanted to bar his parenting time.

On January 6, 2023, Cori attended an evaluation at the Metropolitan Regional Diagnostic and Treatment Center (RDTC) to assess for "sexual abuse, physical abuse, neglect, and overall psychosocial functioning." The report generated from her visit found that Cori was "oriented to person, place, and time

6

and showed no evidence of a thought disorder." It stated that Cori could distinguish between telling the truth and lying, promised to tell the truth, and reported her father had told her she "shouldn't tell people what is going on in my family."

The report included statements from Cori that her father would view her "private part" in the past when she went to take a bath, which made her uncomfortable. She also described him showing her sexually explicit photos of women on his phone and rubbing her inappropriately on her buttocks "sometimes." Cori also informed the evaluator that when she would move away from Albert's reach, that he would accuse her of not loving him. She reported her father had hit her on her shoulder, back, and ribs with an open hand, which caused her to feel "sad and embarrassed" and "pain." She also said her father told her she was not a good person and called her "[f]oolish, silly, and idiot." She also reported she was afraid when her father yelled and hit her.

Cori admitted to high-risk behaviors including lying and playing with matches. She also reported sleeping problems and nightmares and having eating issues. She stated she had difficulty sleeping at her father's home because she feared he would do "bad things" to her such as killing her and her mother, although she admitted he had never threatened to harm either. She stated she

7

had nightmares at her mother's home that her father would hurt her. She stated she did not have nightmares at her father's home because she could not sleep there. She reported she would burn items after returning from her father's home because she felt sad and did not want to stay with him. As to lying, she admitted she had lied once about her age, but said it was a joke.

Overall, Cori reported feeling "sad and unsafe and irritated and uncomfortable" about everything she reported. She worried that her father would "come and hurt me" and randomly thought about the times he had hit her. The evaluator diagnosed Cori with "Other Specific Trauma and Stressor-Related Disorder" and recommended trauma-focused therapy to address the reported abuse, her fear of her father, and her feelings of not belonging when she was with her father and grandmother. The evaluator recommended an evaluation for Albert, to assess his behavior in light of Cori's disclosures and address boundaries, parenting skills to provide guidance on boundaries, developmental expectations, and safe discipline; and family therapy to address Albert and Cori's relationship.

On February 25, 2023, the East Orange police contacted the Division to report that Claudia had contacted them alleging Albert had sexually and physically abused Cori. The Division did not open a new investigation since the

allegations had already been reported. The Division case worker visited Albert and Cori that same day and found Cori smiling and comfortable in her father's home. The Division consolidated all of these reported allegations into Investigation 21558111.

On August 23, 2023, the Division sent Albert a letter informing him that it had made an initial determination that the allegations of sexual abuse were "not established." While its investigation did not amount to a preponderance of the evidence that Cori had been abused or neglected, nevertheless the letter stated that "some credible evidence" indicated Cori had been harmed or placed at risk of harm. The letter advised Albert that he could provide additional information for the Division's consideration and that all supplemental information would be added to the case record, which the Division would review before making its final determination.

Subsequently, Albert provided the Division with video recordings and written timelines of Cori 's weekend visits, as well as other documents, to contest the "not established" finding. He asserted the allegations were engineered by Claudia to gain an advantage in their matrimonial case and that she had involved Cori in CMO services solely to generate referrals to the Division. Subsequently, the Division issued a clarification letter with revised findings on December 7,

2023 after conducting a review of the investigation. The Division explained there was "some evidence gathered" to support that Cori was "harmed or placed at risk of harm."

On February 1, 2024, after considering all information provided, the Division declined to change the "not established" finding because the information submitted by Albert was insufficient to alter the Division's conclusion.

Division Investigation #21692977

On May 17, 2023, the Division received a report from Newark Beth Israel Hospital that Cori had been seen there on May 12 for chest pain and had explained her father had put his hands in her anus the previous weekend. She reported the chest pain occurred whenever she had to visit him. That same day, the East Orange police made a similar report to the Division. The East Orange police report stated that Claudia claimed Albert has used his middle finger to penetrate Cori in her anal area over her clothing.

On May 19, the Division investigator spoke to Cori at her school. She informed the investigator that she had not liked her last visit with her father, which occurred at her paternal grandmother's home. She stated her grandmother called her "ugly bird" and said "bad stuff" about her mother. She asserted her

grandmother forced her to walk to and from the shower without any clothes which made her uncomfortable.

Cori reported she also felt uncomfortable and unsafe around her father because he would stare at her for long periods of time, look up and down her body, and attempt to show her pictures on his phone of naked and half-naked women. She reported he also touched her in uncomfortable ways. Cori demonstrated how her father had forced her to sit between his legs at a previous visit. She stated when she told him she did not like sitting there, and attempted to get away, that he held her and forced her to stay. She reported she felt "something get[] hard on her butt" when sitting on Albert's lap. During the most recent visit, she reported he had held her shoulders and breasts and then demonstrated how his thumbs touched her nipples over her clothes and moved in a circular motion. She also reported that her father had taken away her cell phone and threatened to break it if she brought it to another visit. She alleged her father had threatened her not to tell anyone about what occurred.

After speaking with Cori, the investigator reached out to Albert to inform him of the referral and request he sign a safety protection plan, but he refused. The Division then exercised an emergency removal of Cori from Albert and placed her in the custody of her mother.

On May 21, Albert contacted the Division to report his concern that Claudia was coaching Cori to make false allegations against him and his belief that she was exposing Cori to inappropriate sexual "images and conversations." On May 23, the trial court upheld the removal, granted custody of Cori to Claudia, granted the Division care and supervision, and provided Albert with supervised visits. The order further provided that Albert retained joint legal custody.

On June 26, Cori attended an interview at the Essex County Prosecutor's office. She described her father touching her breasts while searching for her electronic devices. The Prosecutor's Office informed the Division investigator that it seemed like Cori was being coached into making the statements.

On October 25, the Division sent Albert a letter informing him that the Division determined that the allegations of sexual abuse in the second investigation were "not established." The letter also indicated that he could provide additional information for the Division's consideration if he disagreed.

On November 19, Albert responded and sent the Division a letter reiterating his belief that Claudia had concocted the sexual abuse allegations and attaching the same documents he submitted in the first investigation, as well as

additional video clips, a timeline of the May 6-7, 2023 visit, a copy of a motion he had filed in the matrimonial case, and a copy of a New Jersey statute.

On January 31, 2024, after considering all the information from the investigation and the additional information from Albert, the Division declined to modify or amend their finding of "not established," finding the information did not alter its conclusion.

Albert appealed from the two agency findings of "not established" arguing the following points:

> POINT I
> THE DIVISION ERRED, NEGLIGENT AND FAILED TO SUBSTANTIATE A FINDING AGAINST MOTHER ALTHOUGH FATHER CALLED THE HOTLINE WITH A COMPLAINT AGAINST MOTHER AND A FORENSIC INTERVIEW CONFIRMED FATHER'S CONCERNS. FATHER ALSO RAISED CONCERN WITH DIVISION STAFF AND ATTORNEY.

> POINT II
> THE DIVISION ERRED IN ISSUING A FINDING LETTER IN INVESTIGATION 21692977 WITH AN INCOMPLETE AND FLAWED INVESTIGATION WHILE VIOLATING N.J. ADMIN. CODE §3A:10-3.1(b). THE DIVISION'S NOT ESTABLISHED FINDING IS ARBITRARY, CAPRICIOUS, UNREASONABLE AND LACKS FAIR SUPPORT IN THE RECORD.

13

POINT III
THE DIVISION ERRED AND WAS NEGLIGENT IN NOT REVIEWING THE CONTENTS OF THE ADDITIONAL INFORMATION SUPPLIED BY FATHER. THE DIVISION'S NOT ESTABLISHED FINDING IN BOTH INVESTIGATIONS IS ARBITRARY, CAPRICIOUS[] [AND] UNREASONABLE, AND LACK FAIR SUPPORT IN THE RECORD.

## II.

Our review of an administrative agency's final decision is limited. Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017) (citing In re Stallworth, 208 N.J. 182, 194 (2011)). "We will not reverse an agency's judgment unless we find the decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Id. at 202 (quoting Stallworth, 208 N.J. at 194). Findings by the Division after an investigation must have "fair support in the record." Dep't of Child. and Fams. v. T.B., 207 N.J. 294, 301 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008)). However, we are "in no way bound by the agency's

interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co., Inc. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

The Division "is charged with the responsibility to investigate all allegations of child abuse or neglect." S.C. v. N.J. Dep't of Child. & Fams., 242 N.J. 201, 211 (2020). After the Division has investigated, it can render one of four possible determinations: "substantiated, established, not established, or unfounded." N.J.A.C. 3A:10-7.3(c); S.C., 242 N.J. at 211. A "substantiated" or "established" finding is one in which "the preponderance of evidence indicates that [the] child is an 'abused or neglected child' as defined in N.J.S.A. 9:6-8.21." N.J.A.C. 3A:10-7.3(c)(1) and (2).

By contrast, a "not established" finding is one in which "there is not a preponderance of the evidence that [the] child is an abused or neglected child . . . , but evidence indicates that the child was harmed or was placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(3). Our Supreme Court has explained that a "not established" finding requires some "credible evidence" that the child was harmed or placed at risk of harm. S.C., 242 N.J. at 239. The Court has also explained that the Division's "finding" is not based on "adjudicated facts . . . ; rather, it merely ascribes what functions as a working label to the evidence collected through investigation." Id. at 235.

15

"Thus, a 'not established' finding . . . differ[s] from an 'established' or 'substantiated' finding of abuse or neglect [in] two ways:  first, relating to the quantum of evidence, and second, the nature of the finding." N.J. Dep't of Child. & Fams. v. R.R., 454 N.J. Super. 37, 41 (App. Div. 2018).  "[I]n a 'not established' finding, that lesser quantum of evidence 'indicates' only [the] child 'was harmed or was placed at risk of harm,' and does not establish the child was an 'abused or neglected child' under N.J.S.A. 9:6-8.21(c)." Id. at 42 (quoting N.J.A.C. 3A:10-7.3(c)(3)).  Indeed, "placing a child 'at risk of harm' may involve a lesser risk than the 'substantial risk of harm' or 'imminent danger' required to establish abuse or neglect under the statute." Ibid.  If "the evidence indicates that a child was not harmed or placed at risk of harm," the allegation is deemed "unfounded." N.J.A.C. 3A:10-7.3(c)(4).

Our Supreme Court has held that the Division's standard for making a finding of "not established" is "vague, amorphous, and incapable of any objective calibration." S.C., 242 N.J. at 201.  "All we know is that it requires less than a preponderance of the evidence and involves 'some' evidence.  At the very least, the 'some evidence' description advanced by [the Division] must be understood to be 'credible evidence.'" Ibid.

Although the Division's records and reports associated with a "not established" determination remain statutorily confidential, the information can be made available under twenty-three circumstances identified in N.J.S.A. 9:6-8.10(a), and by the Department of Children and Families in other contexts relating to its child protection and welfare work. See S.C., 242 at 212, 229-30. By contrast, an "unfounded" finding is subject to expunction. N.J.A.C. 3A:10-7.7(b).

Albert argues that the Division's investigations did not yield the quantum of credible evidence required to sustain the finding of "not established," and, therefore, the Division should change its finding to "unfounded." He contends the video evidence and timelines he submitted to the Division were not adequately considered. Further, he argues his daughter has been "coached" by Claudia to report sexual and physical abuse allegations against him.

We are not persuaded. We conclude Albert has failed to sustain his burden to clearly show that the Division's findings of "not established" in the two separate investigations were "arbitrary, capricious, or unreasonable, or that [they] lack[ed] fair support in the record." T.B., 207 N.J. at 301 (quoting Herrmann, 192 N.J. at 27-28.)

17

## A.

<u>Division Investigation 21558111</u>

The Division explained in its findings that Cori "consistently disclosed" every time Albert showed her a video, he "rubs her butt." The Division noted Cori's reporting of Albert putting his "fingers on her butt cheeks and his palm in her butthole" constitutes some evidence of harm or risk of harm to her. The Division also noted Cori's RDTC diagnosis of "Other Specific Trauma and Stressor-Related Disorder.". The Division acknowledged Albert's belief that the allegations were false and related to his matrimonial case. As to Albert's parenting time videos and other submissions, the Division explained it received the additional information and it was considered before reaching its finding of "not established." The Division found the additional information did not alter its investigatory conclusion.

We conclude the record supports the Division's findings that there was "some evidence" of abuse and neglect. Cori had made reports on four separate occasions that her father had abused her. Although there was some evidence that Cori may have been coached by Claudia to make these statements due to the divorce/custody issues, a review of the specific evidence found through the interviews and evaluations of Cori support the Division's finding of "not

established" in the first investigation. We conclude because some credible evidence of abuse existed in the record, the Division's finding was not arbitrary, capricious or unreasonable.

B.

Division Investigation 21692977

Regarding the findings made by the Division based on its second investigation, we conclude the Division relied upon sufficient evidence in the record to support its finding of "not established." This evidence included Cori's "consistent reports" of feeling unsafe and uncomfortable when her father was present, her report of Albert touching her breasts, her description of being forced to sit between his legs and feeling "something gets hard on her butt," and her RDTC diagnosis of "Other Specific Trauma and Stressor-Related Disorder" resulting in its recommendation that Cori attend trauma-focused therapy. Accordingly, we discern no basis to disturb the Division's determination in the second investigation because credible evidence existed in the record showing some evidence of abuse. Therefore, the Division's finding in its second investigation was not arbitrary, capricious or unreasonable.

To the extent we have not addressed any of Albert's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1644-23