# RECORD IMPOUNDED

> **NOT FOR PUBLICATION WITHOUT THE**
> **APPROVAL OF THE APPELLATE DIVISION**
>
> This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0095-24

A.K.,[1]

     Petitioner-Appellant,

v.

DEPARTMENT OF CHILDREN
AND FAMILES, DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Respondent-Respondent.

_____

     Submitted September 24, 2025 – Decided October 15, 2025

     Before Judges Currier and Berdote Byrne.

     On appeal from the New Jersey Department of Children and Families, Division of Child Protection and Permanency, Case ID No. 15653232.

     Williams Law Group, LLC, attorney for appellant (Alvin Eugene Richards, III, of counsel and on the brief).

---

[1] We use initials and pseudonyms to protect the identity of the interested parties and the minor, and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Nicholas Dolinsky, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner, A.K. ("Anna"), appeals the August 12, 2024 final agency decision of the New Jersey Department of Children and Families, Division of Child Protection and Permanency ("DCF"), which rendered a finding of "not established" regarding allegations of abuse or neglect involving her seventeen-year-old daughter, "Dara." This matter arose after Dara reported to her school guidance counselor she had been physically and mentally abused by Anna, resulting in visible bruising and emotional distress.

On appeal, Anna argues the Division's "not established" finding is arbitrary, capricious, and unreasonable, contends the record is insufficient to support a determination Dara was harmed or placed at risk of harm, and requests the finding be vacated and changed to "unfounded." Although Anna denies the allegations and challenges Dara's credibility, the record includes consistent statements by Dara, corroborating photographs of injuries, psychosocial evaluations supporting harm, and admissions by Anna regarding concerning disciplinary actions. As credible evidence in the record supports the DCF's determination Dara was harmed or placed at risk of harm, we affirm.

2

I.

On October 3, 2022, the Division received a report concerning allegations Anna had physically abused her seventeen-year-old daughter, Dara.[2] The Division initiated an investigation and issued a finding letter designating the allegation of abuse or neglect against A.K. as "established." Subsequently, the Division issued a "Notice of Change of Finding," amending its previous determination from "established" to "not established."

Anna filed an appeal contesting the "not established" finding. On August 12, 2024, DCF issued its final agency decision maintaining the "not established" finding. This appeal followed.

On October 3, 2022, the Division received a report from Dara's school guidance counselor expressing concerns that Dara was being abused by her mother. According to the report, Dara stated her mother "has been mentally abusing her and physically abusing her for years." She said she was "afraid to go home as she does not feel safe" and claimed her mother "hits her, usually with her hand." Dara also reported a "major incident" over the weekend where Anna was "hitting her repeatedly."

---

[2] Dara's biological father is not a party in the matter before the court. He and Anna divorced when Dara was nine years old and he does not have regular contact with her.

Later the same day, Division staff met with Dara. She recounted an argument she had with Anna, which arose because she attended a football game with a friend Anna disapproved of and used a social media account she was not allowed to have. Anna took away her phone and "hit her with a gray mop on the leg." Dara also reported being forced to "sleep on a mattress in the hallway between the living room and bathroom" as punishment. Dara described another incident where an argument ensued, leading Anna to hit her with one hand on the arm and pull on her hijab.

Dara showed the investigator two "linear marks about 6 inches long" on her thigh, explaining those resulted from Anna striking her with the mop. Additionally, the Division worker observed a "circular bruise about a quarter size." Photographs were taken of Dara's injuries, including bruising on her thigh and arms and cut marks on her arms.

The Division interviewed Anna the same day. Anna denied hitting Dara and denied knowing how Dara received the bruises on her leg. However, she admitted to pinching Dara's neck and grabbing her hijab while driving her home, explaining she did so because Dara "was screaming at her and [she] wanted her to stop." The Division also interviewed Anna's three other children, all of whom

4

denied their mother physically disciplined them or their siblings and denied any knowledge of how Dara obtained the bruise on her leg.

After the interview at the police station, Dara "begged [the Division] worker to take her out of the home," stating "she did not feel safe" and was "fearful for her life." When encouraged to return home so a mobile crisis worker could evaluate her, Dara "began to shake" and said she would "run[]away if need be." After Dara eventually agreed to return home, the crisis worker recommended Dara undergo a psychiatric evaluation, but Anna refused to take her to the evaluation. When the Division worker tried to find a temporary place for Dara to stay, Anna said she had no family or support system available, and the Division would have to take Dara into custody if she could not remain at home. As a result, the Division decided to remove Dara from the mother's care, transported her to the hospital for a psychiatric assessment, and then placed her in a resource home. Although Anna contacted the Division the following day to inquire about Dara, she declined to make a plan for Dara's return home, stating she wanted "to teach [her] a lesson."

Dara was subsequently interviewed by the Passaic County Prosecutor's Office ("PCPO"), where she reiterated the events of the prior two alleged assaults and provided further information. She explained her mother had picked

5

her up from work, and upon becoming angry, "began hitting [her], and banging [her] head on the center compartment of the car, in between the seats." Dara recounted her mother was "screaming." Dara said she had been "afraid of [Anna her] whole childhood," claiming the abuse began when she was five or six years old. She also described previous incidents occurring in 2021 and 2022, which included Anna yelling at her, hitting her with household objects, putting hot sauce in her mouth, cutting her hair as a form of punishment, and directing her brothers to hit her. Dara reported she had begun cutting herself to deal with her trauma.

Dara underwent a mental health assessment at Audrey Hepburn Children's House ("AHCH"). Dara reiterated the aforementioned instances of abuse. She reported intrusive thoughts related to the events, but she also expressed being "relieved" since being removed from her mother's home. AHCH recommended Dara "participate in individual therapy" and undergo a "psychosocial evaluation to address concerns related to physical and emotional abuse."

Thereafter, Dara underwent a psychosocial evaluation at AHCH. During the evaluation Dara reiterated the aforementioned instances of abuse. In addition, Dara reported her mother had recently shown up at her workplace to instruct her to return home, which caused Dara to have a "panic attack."

6

AHCH found Dara's responses were "consistent with the intrusion, avoidance, and cognitive symptoms of Post-Traumatic Stress Disorder."

Anna was interviewed by the PCPO where she again denied disciplining Dara with a mop or dragging her by her hair, but acknowledged cutting Dara's hair as a form of discipline, forcing her to sleep on the floor as punishment, and slapping her with an open hand. Anna further admitted to "breaking [six] phones and [two] laptops" in response to Dara's "behavior issues."

The DCF first issued a finding letter designating the allegation of abuse or neglect against Anna as "established." However, it subsequently issued a "Notice of Change of Finding," amending its previous determination from "established" to "not established." The reasoning for the DCF's finding is as follows:

> [Dara] sustained [two] bruises to her left thigh that were linear in shape and approximately [six] inches long. [Dara] reported being hit by [Anna] with a mopstick as a result of making a fake social media account. The bruises were consistent with being hit with a mopstick. [Dara] also reported another occasion when [Anna] struck her and banged her head against the central console in her car. [Dara's] statements were supported by the Audrey Hepburn Children's House psychosocial team evaluation, the caseworker's observations, and photographs.
>
> [Anna] confirmed using physical methods of discipline by using her hand to strike [Dara]. [Anna] reported

7

slapping [Dara], grabbing her by her hijab, cutting [her] hair as a form of discipline, forcing [her] to sleep on a mattress outside of the bathroom as a form of discipline, as well as breaking [six] cellular telephones and [two] laptops that belonged to her children as a result of their misbehavior.

[Dara] reported cutting herself to cope with being physically hit and psychologically impacted by [Anna]. [Anna] was aware of [Dara's] cutting and refused to bring her to an emergency room for psychiatric assessment/intervention which resulted in [Dara's] removal from [Anna's] care.

The aforementioned details reflect [Dara] was harmed or placed at risk of harm by [Anna].

Anna sent the DCF a "rebuttal" letter and requested the "not established" finding be changed to "unfounded." In the letter, Anna stated she and her then-husband, T.A., were engaged in domestic violence and divorce proceedings in 2023. She alleged T.A. had been harassing her and "threaten[ed] to take the children if [Anna] d[id] not agree to withdraw the divorce complaint and domestic violence appeal." Consequently, Anna argued: "Based on T.A.'s willingness to take these lengths in harassing and threatening [Anna], there is certainly the possibility that his effort could include the manipulation or coaching of [Dara]." Anna further argued Dara's statements lacked credibility.

A-0095-24

On August 12, 2024, the DCF informed Anna it would not alter the investigatory finding of "not established," which now constituted a final agency decision. This appeal followed.

II.

Our review of an administrative agency's final decision is limited. Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017) (citing In re Stallworth, 208 N.J. 182, 194 (2011)). We must consider whether the DCF's "not established" finding is "arbitrary, capricious, or unreasonable" or lacked "fair support in the record." Dep't of Child. & Fams. v. T.B., 207 N.J. 294, 301 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)); see also N.J. Dep't of Child. & Fams. v. D.B., 443 N.J. Super. 431, 440 (App. Div. 2015). We "extend substantial deference to an 'agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible' based on the agency's expertise.'" N.J. Dep't of Child. & Fams. v. R.R., 454 N.J. Super. 37, 43 (App. Div. 2018) (quoting In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 489 (2004)). However, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co., Inc. v. Bureau of Sec., 64 N.J. 85, 93 (1973). Although broad discretion is afforded due to the DCF's specialized knowledge, the DCF

must provide a proper record establishing the basis for its finding so it may be fairly considered on appeal. S.C. v. N.J. Dep't of Child. & Fams., 242 N.J. 201, 212, 329 (2020).

When administrative review is not available, agency findings are a final decision appealable as of right to the Appellate Division. R. 2:2–3(a)(2). In the context of child abuse and neglect, N.J.A.C. 3A:10 provides no right of administrative review for a finding that abuse or neglect has been "established," "not established," or "unfounded." See N.J.A.C. 3A:5-4.3(a)(2) (providing for administrative review only with respect to a finding of "substantiated"). Because there was no administrative review of the DCF's determination in this case, it is appealable as of right to the Appellate Division. See D.B., 443 N.J. Super. at 442.

Appellate review is significant because, despite its favorable label, a "not established" finding may have lasting implications. See R.R., 454 N.J. Super. at 39 ("One might wonder why a person would appeal such an apparently favorable finding, but the meaning of 'not established'" is not what it seems . . . . [It] still permanently tars a parent with a finding that there was something to the allegation."). And the Legislature mandates expunction only for allegations of child abuse or neglect classified as "unfounded." S.C., 242 N.J.

at 212. There are no statutory or regulatory provisions authorizing expungement for any of the other three possible findings. Id. at 211-12 ("Because the abuse allegation was deemed 'not established,' it is not eligible to be expunged."). Although the DCF's records and reports regarding a "not established" determination remain statutorily confidential, the information may be available pursuant to twenty-three circumstances identified in N.J.S.A. 9:6-8.10(a), and by the DCF in other contexts relating to child protection and welfare. Id. at 212, 229-30.

On appeal, Anna contends the only evidence in support of the Division's finding was Dara's hearsay evidence, which cannot be the sole basis for a finding of abuse or neglect. Further, Anna claims there must be, at a minimum, a showing she acted recklessly to be found culpable of child abuse or neglect.[3]

All of Anna's arguments are irrelevant to the issue before us, which is whether DCF's finding of not established was arbitrary, capricious, or unreasonable, or lacked support in the record. Anna's numerous references to abuse and neglect, and citations to case law involving evidentiary issues relating

---

[3] To the extent Anna presented arguments in her rebuttal letter to the Division but did not raise them on appeal, she has waived those arguments. See 539 Absecon Blvd., L.L.C. v. Shan Enters. Ltd. P'ship, 406 N.J. Super. 242, 272 n.10 (App. Div. 2009) (noting claims that have not been briefed are abandoned on appeal).

to abuse and neglect, are immaterial. There is no dispute the DCF did not allege Anna committed abuse and neglect and there is no question DCF did not pursue a judicial finding of abuse and neglect.

The Division "is charged with the responsibility to investigate all allegations of child abuse or neglect." Id. at 211. After the Division has investigated, it may render one of four possible determinations: "substantiated," "established," "not established," or "unfounded":

> 1. An allegation shall be "substantiated" if the preponderance of the evidence indicates that a child is an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21 and either the investigation indicates the existence of any of the circumstances in N.J.A.C. 3A:10-7.4 or substantiation is warranted based on consideration of the aggravating and mitigating factors listed in N.J.A.C. 3A:10-7.5.
>
> 2. An allegation shall be "established" if the preponderance of the evidence indicates that a child is an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21, but the act or acts committed or omitted do not warrant a finding of "substantiated" as defined in (c)1 above.
>
> 3. An allegation shall be "not established" if there is not a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm.
>
> 4. An allegation shall be "unfounded" if there is not a preponderance of the evidence indicating that a child is

an abused or neglected child as defined in N.J.S.A. 9:6-8.21, and the evidence indicates that a child was not harmed or placed at risk of harm.

[N.J.A.C. 3A:10-7.3(c)].

Pursuant to this four-tiered regulatory scheme, "a 'not established' finding . . . differ[s] from an 'established' or 'substantiated' finding of abuse or neglect [in] two ways: first, relating to the quantum of evidence, and second, the nature of the finding." R.R., 454 N.J. Super. at 41. "[I]n a 'not established' finding, that lesser quantum of evidence 'indicates' only [the] child 'was harmed or was placed at risk of harm,' and does not establish the child was an 'abused or neglected child' under N.J.S.A. 9:6-8.21(c)." Id. at 42 (quoting N.J.A.C. 3A:10-7.3(c)(3)). Indeed, "placing a child 'at risk of harm' . . . involve[s] a lesser risk than the 'substantial risk of harm' or 'imminent danger' required to establish abuse or neglect under the statute." Ibid. Furthermore, a "not established" finding is distinguishable from a determination of the fourth category, "unfounded," which is appropriate where "evidence indicates that a child was not harmed or placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(4); see S.C., 242 at 227 ("The critical distinction between findings of not established and unfounded is that not established findings are based on some evidence, though

not necessarily a preponderance of the evidence, that a child was harmed or placed at risk of harm.").

In S.C., our Supreme Court thoroughly charted the development of the four designations under N.J.A.C. 3A:10-7.3(c) and the DCF's evidentiary burden with respect to each category. In its discussion, the Court particularly focused on the advent of the "not established" designation by regulation in 2013. See S.C., 242 N.J. at 224-30. Although the "not established" designation denotes the evidence of child abuse or neglect fell below the level of a "preponderance of the evidence," the Court in S.C. explained the regulation itself provides no further guidance as to the applicable evidentiary standard. Id. at 225 (citing N.J.A.C. 3A:10-7.4(c)(3), which states that "not established" requires only a finding the "evidence indicates that the child was harmed or was placed at risk of harm."). Accordingly, the Court found the DCF's standard for making a finding of "not established" "vague, amorphous, and incapable of any objective calibration." S.C., 242 N.J. at 201. However, the Court declined to address this issue as the parties did not present a facial challenge to the regulation. Ibid.

Anna incorrectly conflates a finding of "not established" with a finding of "child abuse or neglect," stating the two are not "truly distinct" from each other. As the DCF points out, this assertion contradicts the plain language of N.J.S.A.

9:6-8.21(c) and N.J.A.C. 3A:10-7.3. The definition of "not established" is clear and unambiguous that it is not a finding of child abuse or neglect. See N.J.A.C. 3A:10-7.3(c) ("An allegation shall be 'not established' if there is not a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm."). Not only is the quantum of evidence different, but the consequences of a finding of abuse or neglect are far more severe. See N.J. Div. of Child Prot. & Permanency v. J.R.-R., 248 N.J. 353, 359 (2021) ("When a court finds that a parent has committed an act of abuse or neglect against a child, the parent faces serious consequences that could include the termination of the parent's custodial rights to the child.").

Nevertheless, Anna's argument focuses on whether there was enough evidence to support a finding of abuse or neglect, which is irrelevant because the allegations were neither "substantiated" nor "established"; they were deemed "not established." For example, Anna contends the only evidence in support of the DCF's finding was Dara's hearsay evidence, which cannot be the sole basis for a finding of abuse or neglect. See N.J.S.A. 9:6-8.46(a)(4) ("[P]revious statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however that no such statement, if

15

uncorroborated, shall be sufficient to make a fact finding of abuse or neglect."); see also N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 32-33 (2011). However, the plain language of N.J.S.A. 9:6-8.46(a)(4) tethers the corroboration requirement to findings of abuse or neglect, which are inapplicable here. Similarly, Anna claims there must be, at a minimum, a showing she acted recklessly to be found culpable for child abuse or neglect. See G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999). Once again, this standard is applicable only in abuse or neglect cases; the relevant standard here is the "some credible evidence" standard adopted by our Supreme Court in S.C.

There is no dispute the Division did not conclude, by a preponderance of the evidence, that Dara was abused or neglected. There is credible evidence in the record to support the finding of "not established." The Division conducted a comprehensive and thorough investigation taking into account: 1) interviews with Anna, Dara, and Dara's three siblings; 2) Dara's voluntary statement to the PCPO; 3) caseworker observations and photographs documenting Dara's bruising in a manner consistent with the reported events; and 4) mental health and psychosocial evaluations performed by AHCH.

Dara was consistent in her multiple recitations and never contradicted her account of the incidents. And despite there being no corroboration requirement

for a finding of "not established," Dara's reports were corroborated by the photographs of her bruises and cut marks. The DCF found the bruises depicted in the photograph consistent with being struck by a mop handle.

The "not established" finding was further supported by the evaluations conducted by AHCH, which included both a mental health assessment and a psychosocial evaluation of Dara  More importantly, Anna's own admissions—slapping Dara with an open hand and grabbing her by the hijab, forcing Dara to sleep on the floor in front of the bathroom and cutting her hair as forms of discipline, and breaking various electronic devices in uncontrolled anger—support the DCF's finding that Dara was placed at risk of harm.

In fact, Anna's refusal to take Dara to the emergency room for psychiatric evaluation after acknowledging Dara's self-harm is sufficient to provide support for the DCF's conclusion there existed "some credible evidence" of harm or risk of harm. We are satisfied the DCF's finding of "not established" was supported by the evidence in the record and was not arbitrary, capricious or unreasonable.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

17